THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. PALMER M. WOOD, Respondent.

The provisions of the act of 1875 (Chap. 49, Laws of 1875), authorizing the People of the State to bring certain actions for the recovery of public moneys, as re-enacted in the Code of Civil Procedure (§ 1969 *et seq.*), create no new causes of action, and do not take away those existing in favor of counties or municipalities, unless the State manifests its intention to enforce them by action. They simply authorize the State authorities to intervene and to enforce causes of action against offending parties which have accrued to certain subordinate political divisions of the State.

An action so brought by the People, therefore, is to be determined by the same principles as would govern an action brought by the municipality.

In an action brought under said provisions of the Code, the complaint alleged, in substance, that defendant, as clerk of the county of Herkimer, during a period of seven years, performed services for which he was entitled to payment; that in each year he made out and presented to the board of supervisors his account and claims for services and expenses, which were audited and allowed, and the amount paid to him by the officers of said county; that such bills were, as to over 1,500 separate and distinct items enumerated in the complaint, illegal, false, fictitious and fraudulent, and in excess of the legal fees, and were illegally allowed and paid to defendant; that he had become indebted to said county for said sums, and judgment was demanded therefor with interest. The answer, after denying the charges in the complaint, set up as counter-claims 250 separate charges against the county for services. A referee was appointed upon plaintiff's motion. *Held* (GRAY, J., dissenting), no error; that the *gravamen* of the complaint was the receipt, possession and unjust detention of moneys, and so, the action was on contract, involving long accounts, and a compulsory reference was proper; that the allegations in the complaint that defendant obtained such moneys upon false, fictitious, excessive and fraudulent charges and accounts, constituted no part of the statement of the cause of action and did not necessarily render the action one in tort.

As regards the power of the court to order a reference, there is no difference between express and implied contracts.

*It seems,* that if, upon the facts alleged, a cause of action in tort, as well as one on contract, might be spelled out, it was optional with the plaintiff to waive the tort and rely upon assumpsit.

*It seems,* also, that plaintiff's motion to refer constituted an election on its part to waive any cause of action in tort and to found the right to recover on contract.

(Argued April 28, 1890 ; decided June 17, 1890.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made February 11, 1890, which reversed an order of the Special Term granting a motion for the appointment of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. Earl* for appellant. The order of the General Term is appealable to this court. (*Tolman* v. *S. & B. R. R. Co.*, 92 N. Y. 353; *Snyder* v. *Snyder*, 96 id. 788; *E. L. Ins. Co.* v. *Stevens*, 63 id. 341; *Martine* v. *W. H. Co.*, 70 id. 101; *Camp* v. *Ingersoll*, 86 id. 437; 73 id. 187.) The trial court had the power to order a compulsory reference. (*People* v. *Ingersoll*, 58 N. Y. 1; *People* v. *Fields*, Id. 49; *People* v. *Starkweather*, 10 J. & S. 325; *People* v. *Tweed*, 63 N. Y. 202, 207.) The effect of the legislation under which the action was brought is to give a new or additional remedy, not a new or additional cause of action. (*People* v. *Tweed*, 5 Hun, 382, 391; *People* v. *N. Y. & M. R. R. Co.*, 84 N. Y. 565, 570.) The object of the act is to afford a remedy in all cases, no matter how the funds or money were obtained, whether through fraud, mistake or want of jurisdiction in the auditing power to allow the claim. (Code Civ. Pro. § 1969.) The decision of the learned court below proceeds upon the mistaken theory that the cause of action is statutory. (Code Civ. Pro. §§ 1972, 1974; *Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *A. E. F. Ins. Co.* v. *Britton*, 8 Bosw. 148.) If the county had brought this action instead of the People, it would hardly be contended that the action was founded in tort. In its nature it would have been *ex contractu.* (Code Civ. Pro. § 3280; *Haswell* v. *Mayor, etc.*, 81 N. Y. 255; *Bd. Suprs.* v. *Ellis*, 59 id. 620.) It is well settled that retaining public money, when the auditing power has no jurisdiction to audit and allow the same, constitutes a cause of action *ex contractu*, as for money had and received. Upon principles of natural justice the law implies a promise to pay it back. (*Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *Bd. Suprs.* v. *Van Clief*, 1 Hun,

454; 60 N. Y. 645; *Walker* v. *Ham*, 2 N. H. 238.) It is not true as was contended upon the other side, that to recover moneys illegally or without right received by the defendant, it is necessary to establish fraud. The language of the statute is that the action lies wherever public money is obtained without right. (Code Civ. Pro. § 1969; *People* v. *Stark-weather*, 10 J. & S. 325; *A. S. Co.* v. *Young*, 89 Penn St. 191; *Coffey* v. *Young*, 38 Am. Rep. 364; *Coates* v. *Wallace*, 17 S. & R. 75.) Out of the whole 1513 total charges of the defendant's accounts complained of, there are 411 where it is specifically alleged that the defendant received fees in excess of the legal fees allowed by law. An action to recover back money obtained by charging excessive fees is *ex contractu*, as for money had and received. (*Britton* v. *Frink*, 3 How. Pr. 102; *Mayor, etc.*, v. *Genet*, 67 Barb. 275; *Barber* v. *Morgan*, 51 id. 116; *Butler* v. *Veile*, 44 id. 166.) But assuming that there are allegations in the complaint sufficient to admit proof of the making and presentation of false accounts on the part of the defendant, the action is still *ex contractu* in its nature. (*Byxbie* v. *Wood*, 24 N. Y. 607; *Rothschild* v. *Mack*, 115 id. 1, 8; *King* v. *Barnes*, 109 id. 267, 290; *People* v. *Fields*, 58 id. 491; *People* v. *Ingersoll*, Id. 1.) The pretended allegations of fraud are not so definitely alleged as in the following cases where the Court of Appeals has sustained a compulsory reference. (*People* v. *Peck*, 57 How. Pr. 315; *Harrington* v. *Bruce*, 84 N. Y. 103; *Harden* v. *Corbet*, 6 Hun, 522; *Vilmar* v. *Schall*, 61 N. Y. 564; *Seglken* v. *Mayor, etc.*, 94 id. 473; *Bensel* v. *Galt*, 2 Hun, 678; *Austin* v. *Grosbeck*, 44 N. Y. 63; *Conaughty* v. *Nichols*, 42 id. 83; *Ledwick* v. *McKim*, 53 id. 308.) Even grant that there are two causes of action stated in the complaint, which is denied, one *ex delicto*, and the other *ex contractu*, the defendant not having demurred or made a motion to elect, must be deemed to have waived the irregularity. (Code Civ. Pro. § 499; *Quintard* v. *Newton*, 5 Robt. 72; 71 N. Y. 608; *Comstock* v. *Hier*, 73 id. 269.) In this case the plaintiffs by moving for a reference must be deemed thereby to have made their election to pro-

ceed *ex contractu.* By opposing the reference the defendant seeks to make the opposite election. (*Camp* v. *Ingersoll*, 86 N. Y. 436; *Hossack* v. *Hyerdall*, 6 J. & S. 391; Code Civ. Pro. § 1013.) No recovery can be had in this action unless it is based upon the disputed accounts of the defendant. To refer this action, therefore, was a proper exercise of discretion of the trial court. (Code Civ. Pro. §§ 549, 3280; 1 R. L. 502; Laws of 1846, chap. 150; *Bd. Suprs.* v. *Van Clief*, 1 Hun, 454; 60 N. Y. 645.) The sole question is the jurisdiction of the board of supervisors to audit illegal charges. (*Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *Haswell* v. *Mayor, etc.*, 81 id. 255; *Bd. Suprs.* v. *Van Clief*, 1 Hun, 454; 60 N. Y. 645; *People* v. *Starkweather*, 10 J. & S. 325; *A. E. F. Ins. Co.* v. *Britton*, 8 Bosw. 148; *People ex rel.* v. *Lawrence*, 6 Hill, 244.) No difficult questions of law are involved. (*People* v. *Tweed*, 63 N. Y. 202, 207; *People* v. *Starkweather*, 10 J. & S. 325; *People* v. *M. R. R. Co.*, 84 N. Y. 565.) The board of supervisors has no jurisdiction to audit illegal accounts. (*People ex rel.* v. *Lawrence*, 6 Hill, 244; *Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *Haswell* v. *Mayor, etc.*, 81 id. 255; *Crofut* v. *Brandt*, 58 id. 106; Vinn. Ab. Title Fees; *Andrews* v. *U. S.*, 2 Story, 202; *Converse* v. *U. S.*, 21 How. Pr. 463; *Talbot* v. *Inhab. East Machias*, 76 Me. 415; *C. Co.* v. *Crump*, 25 Ark. 235; *Carlyle* v. *Sharp*, 51 Ill. 71; *Jay County* v. *Templer*, 34 Ind. 322; *Simmons* v. *Kelley*, 33 Penn. St. 190; *Brophy* v. *Marble*, 118 Mass. 548; Code Civ. Pro. §§ 1969, 1972, 3280.) There is nothing for a jury to do in this case unless it be to determine what items constitute the accounts of the defendant. (*Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *Bd. Suprs.* v. *Van Clief*, 1 Hun, 454.)

*A. M. Mills* for respondent. The order of the Supreme Court at General Term refusing a reference of the cause is not reviewable in this court. Such an order is discretionary with the Supreme Court and cannot be reviewed. (*Cushman* v. *Brunditt*, 50 N. Y. 296; *People* v. *Schoonmaker*, 50 id. 499.) A compulsory reference of this cause for trial against

the objection of the defendant was not lawful. (Const. art. 1, § 2; *Townsend* v. *Hendricks*, 40 How. Pr. 162.) This is not an action on contract, but is one sounding in tort. The character of the action must be determined by the complaint. The contents of the answer do not affect the action in this respect, even though it does set up a direct counter-claim. (*Welch* v. *Darragh*, 52 N. Y. 592; *Untemeyer* v. *Beinhauer*, 105 id. 521; Code Civ. Pro. § 1969; Laws of 1875, chap. 49; *Sup. of Onondaga* v. *Briggs*, 2 Den. 26; *Guest* v. *Brooklyn*, 69 N. Y. 506; *People* v. *Stocking*, 50 Barb. 573; *Osterhout* v. *Rigney*, 98 N. Y. 234; *Freer* v. *Denton*, 61 id. 492; *Conaughty* v. *Nichols*, 42 id. 83; *Neftel* v. *Lightstone*, 77 id. 96; *People* v. *Peck*, 57 How. Pr. 315; *Willard* v. *D. W. Co.*, 48 Hun, 462; *Wickham* v. *Frezee*, 13 id. 431; *Claflin* v. *Drake*, 38 Hun, 144; *Hyatt* v. *Roach*, 52 How. Pr. 115.) This action is not founded upon an account, and an account is not the immediate object of the action. Where the account is not the immediate object of the action, the case is not referable simply because a large number of items may be examined as elements of damage, or to gauge the amount of recovery. (*Camp* v. *Ingersoll*, 86 N. Y. 433; *Keep* v. *Keep*, 58 How. Pr. 139; *Untemeyer* v. *Beinhauer*, 105 N. Y. 521; *Bradley* v. *Eager*, 5 Wkly. Dig. 330; *Claflin* v. *Drake*, 38 Hun, 144; *Morrison* v. *Horrocks*, 40 id. 428; *Wickham* v. *Frazee*, 13 id. 431.) The trial of this action will require the decision of difficult questions at law, and in such a case a compulsory reference will not be ordered. (*McGowan* v. *Sinclair*, 5 Daly, 63; Code Civ. Pro. § 1013.)

Ruger, Ch. J. This action was brought under section 1969 of the Code of Civil Procedure, to recover certain sums of money alleged to have been obtained by the defendant from the county of Herkimer without right or authority of law. The question involved is whether the action was referable under the statute, and that depends solely upon the question whether it is "an action on contract involving long accounts." The defendant was county clerk of the county, and, as such

officer, had rendered services to it for which he was entitled by statute to certain fees. The money alleged to have been illegally obtained was paid upon bills presented to the county officers, purporting to be statements in detail of the services rendered by defendant for it, and the sums payable therefor under the statutes. These statements consisted of a large number of items covering nearly one hundred and ninety pages of printed matter in the complaint, enumerating over fifteen hundred separate and distinct items. The answer, after denying the charges in the complaint, set up as counter-claims thereto items of other charges against the county for services amounting to upwards of two hundred and fifty separate items. The complaint substantially alleges that the defendant was county clerk of Herkimer county, and performed services as such clerk for the county, for which he was entitled to payment; that in each of the years, 1880, '81, '82, '83, '84, '85 and '86, he made out and presented to the board of supervisors of such county his account and claims for alleged services and money expended for the county; and such bills were audited and allowed by the supervisors at defendant's request, and were thereafter paid to him by the officers of the county; that such bills were, as to the items stated in such complaint, illegal, false, fictitious and fraudulent, and in excess of the legal fees and proper charges allowed by law, and the board of supervisors had no power or authority to audit and allow the same, and the same were illegally allowed and paid to the defendant; that by reason of the premises, the defendant became justly indebted to the county of Herkimer in the sums so unjustly and illegally allowed and paid to him, and demanded judgment for such amounts with interest from the time of payment. It was held by the court at circuit that the action was referable, but, upon appeal, the order of reference was reversed by the General Term upon the ground that the court had no power under the Constitution to refer cases of this kind. It held that courts were confined in the exercise of such power to actions based upon contract and involving the investigation of long accounts, and

we agree with them in such ruling; but they also held that this action was in tort and did not involve the examination of an account within the meaning of the rule, and, in this respect, we are compelled, both upon principle and authority, to differ with them. The authorities to sustain our conclusions are too numerous to justify particular mention, and we will, therefore, use such only as are deemed controlling in this court.

It was said by Judge BRONSON in *Dederick* v. *Richley* (19 Wend. 108), that, although the statute of 1788 was broad enough to include actions of tort as referable, the practice had been for fifty years to order references only in actions of assumpsit, debt on simple contract, and covenant. (*Byxbie* v. *Wood*, 24 N. Y. 607; *Segelken* v. *Meyer*, 94 id. 473; *People* v. *Fields*, 58 id. 504; *Wood* v. *Mayor, etc.*, 73 id. 556.) The mere inspection of the complaint shows that the action is based upon contract alone. It does not state any other cause of action in legal phrase, and does state facts uniformly classi- fied as constituting a cause of action *ex contractu*. (*People* v. *Fields*, 58 N. Y. 491; *Bd. of Supervisors* v. *Ellis*, 59 id. 620; *Britton* v. *Frink*, 3 How. Pr. 102.)

It nowheres alleges fraud, deceit or misrepresentation, as constituting the basis of the action, in such terms as enables the plaintiffs to recover therefor; but the *gravamen* of the com- plaint is the receipt, possession and detention of money by the defendant, which he unjustly refuses to pay over. It does not ask for damages as the consequence of a tort, but demands a liquidated sum upon the ground of a contract liability, and unless such a cause of action is proved the plaintiffs will fail in their action. It alleges all of the facts necessary to consti- tute a good cause of action in assumpsit for money had and received for the use and benefit of its owners, and such actions have been designated from time immemorial in the law as actions *ex contractu*.

The allegations in the complaint that the defendant obtained such moneys upon false, fictitious, excessive and fraudulent charges and accounts, constitute no part of the statement of the cause of action, and do not necessarily render the action in

tort, as they are used for the simple purpose of obviating the effect of an audit by the board of supervisors and to anticipate a possible objection which might be taken by the defendant. (*Byxbie* v. *Wood, supra ; Neftel* v. *Lightstone,* 77 N. Y. 96.) Even if, upon the facts alleged, a cause of action in tort might be spelled out from the language of the complaint, it is established by ample authority that it is still optional with the injured party to waive the tort and rely upon assumpsit, if he chooses to do so where the facts authorize such an action. (*Goodwin* v. *Griffis,* 88 N. Y. 629 ; *Rothschild* v. *Mack,* 115 id. 1.) The right of the plaintiffs to waive their cause of action in tort and found their right to recover upon contract, whether express or implied, is unquestionable, and there is no power either with the defendant or in the court to compel them to proceed upon the tort.

Conceding, however, that the complaint is doubtful and uncertain and states a cause of action maintainable on either theory, the only consequence of this would be to authorize the court to require plaintiffs to elect between such theories, and to declare that upon which they choose to rely. That course the plaintiffs have already adopted, without waiting for an order. The motion to refer constitutes, we think, such an election and precludes the People from afterwards proceeding as in an action for tort. (*Madge* v. *Puig,* 71 N. Y. 608.) The defendant obviously construed this complaint as upon contract, for he set up a defence which was permissible only upon that theory, and it has been allowed to stand without objection. While this fact would not make a cause referable which was not otherwise so, yet it is not without its influence in determining the construction to be given to an uncertain pleading.

It is also claimed that the action is not on contract for the reason that it is created by statute and has statutory authority alone, as it is claimed, for its basis. This claim seems to be based upon a misconception of the meaning and purpose of chapter 49, Laws of 1875, as re-enacted in section 1969 and the subsequent sections of the Code of Civil Procedure, authorizing suits of this character to be brought by the attorney-

general. That such causes of action are not new and existed anterior to the statute is established by abundant authority. (*Bd. Suprs.* v. *Ellis*, 59 N. Y. 620; *People* v. *Fields*, 58 id. 491; *Wood* v. *Mayor*, etc.,73 id. 556.)

These acts created no new causes of action and did not purport to take away those existing in favor of counties or municipalities, unless the state manifested its intention to enforce them by action. They simply authorized the state authorities, when they saw fit to do so, to intervene and enforce causes of action against offending parties, which had accrued to certain subordinate political divisions of the state, to recover property which had been taken or obtained from them without right. The People in the litigation when they bring suit act as the representatives of the municipality or county to establish their rights. It recovers on a cause of action existing in their favor, and can do so only on proof of such a cause of action, and the moneys, when collected, are to be delivered to the parties entitled to them. The circumstances out of which the act arose and the evils it was intended to correct are too recent in occurrence and too significant in purpose to permit any misconception as to its force or effect. Thus it was said in *People* v. *Tweed* (5 Hun, 382) : " Its object was to create a remedy for the ultimate benefit of the county which should not be controlled by the local authorities," and Judge ANDREWS states in *People* v. *N. Y. & M. B. R. R. Co.* (84 N. Y. 565): "The main object of the act, as is evident, was to give an additional remedy for the plundering of municipalities by faithless and venal officials."

The case is, therefore, to be determined by the same principles which would govern an action brought by the county of Herkimer, to recover the same moneys. The argument that this action is not founded on contract is sought to be supported by the suggestion that there is some difference between express and implied contracts. We are not referred to any authority holding that there is any such difference in respect to the power of the court to order a reference, and we do not believe that any such difference exists in principle. The reason for the exercise of the power applies equally to each and the

necessity of such a mode of trial to prevent a failure of justice exists in the case of an implied as well as an express contract. The consequences of a recovery in one case are no more injurious to the rights of a defendant than in the other and no reason seems to exist why any distinction should be made in respect to their modes of trial. The difficulty, if not impossibility of trying and determining justly and intelligently the numerous issues involved in the investigation of long accounts by the aid and intervention of a jury, led, long before the creation of the Constitution, to the adoption of the practice of referring such issues to a referee, to hear and determine, and the reason for such rule applies with equal force to the trial of such issues, whether they arise under an express or implied contract. This case well exemplifies the necessity and propriety of the rule authorizing a reference, for it is obvious to the commonest apprehension, from the enormous number of items involved, each making a separate issue, the length of time necessarily required to take the evidence and consider of the verdict to be rendered, the impossibility that a jury should understand and retain in their memories the testimony given as to each item, and the want of any authority in them to record the evidence as it is given, that it would be practically impossible to try this case to a conclusion before such a tribunal. While this consideration would not, of itself authorize a reference in a case outside of the rule, yet it should forbid a narrow and technical construction, which would produce a substantial denial of justice to an injured party. That the trial of this case involves the examination of a long account, cannot admit of a question. Every step will require a reference to the plaintiff's account and the amount recoverable is determinable by the number and amount of those items which have been allowed and paid without authority of law. No claim is made outside of the items of such account and the correctness of the charges therein is necessarily involved in the trial of the action. The questions involved are almost identical with those which would arise if the defendant had brought his action on the account against the

county. The only difference being, that by becoming plaintiff the county has assumed the burden of proving the defendant's account to be erroneous. The rule makes no distinction as to the party who keeps the account, and it is essential only that the action shall involve an accounting. (*Camp* v. *Ingersoll*, 86 N. Y. 433.)

The necessities of the relation between the county and defendant required the keeping of an account of the services rendered by somebody, and it was a practical impossibility for the county of Herkimer to keep it. It was for the defendant's interest to keep the account and the amounts payable to him were from time to time determined by an examination of his account. Any controversy between the county and the defendant, in relation to the sums due or paid to the defendant by the county, must necessarily involve the examination of this account. We think that this action did, within the meaning of the rule, involve the examination of a long account.

We are also of the opinion that the questions in this case have been authoritatively determined in this court by the case of *People* v. *Peck* (77 N. Y. 630). In that case the state brought an action to recover back from the contractor moneys alleged to have been obtained by him from the state upon false and fraudulent accounts of the amount of work done and materials furnished in the prosecution of work under a contract. This court affirmed the decision of the court below (57 How. Pr. 315) ordering a reference of the issues. We are unable to discover any difference in principle between these cases and we must, therefore, necessarily, be controlled by that decision. It was said by the court below that there was in that case a contract between the parties regulating the relations of the parties, which is true, but it did not even suggest that the action was in any respect founded upon such contract. The contract in that case performed the same office, and no other, that the statutes regulating the fees of county clerks perform in this, and that was to fix the amount which the contractor was authorized to charge. When that was ascertained, the excess paid above

the legal charges, was the sum for which the action was brought and the right to recover it rested alone upon a contract to pay it back, implied by the law from the circumstances of the case.

The principle involved in this case was followed in the case of *Harrington* v. *Bruce* (84 N. Y. 103), where it was held that in an action to recover property held by the defendant, "which had been fraudulently appropriated in pursuance of a conspiracy in fraud of the rights of a lunatic," a reference was authorized.

We entertain no doubt of the referability of the action and have been unable to see that any questions of law are involved that render it necessary that the trial should be had at circuit. The questions suggested have all been the subject of decisions in this and other courts and may be regarded as quite definitely settled.

The order of the General Term should, therefore, be reversed, and that of the Circuit Court affirmed, with costs in this court and at the General Term.

GRAY, J. (dissenting). It is insisted that this action was referable despite the objection of the defendant. The argument on behalf of the people is that the action was to recover back moneys of the county of Herkimer, unlawfully paid upon illegal, excessive and fraudulent bills or accounts of the defendant, and that the cause of action was *ex contractu,* as for money had and received. But is it true that this action is on contract? The discussion of this one question is all that is involved here. A defendant cannot be deprived of his constitutional right to a trial by jury in an action at law, except in the one case where, being on contract, the action involves the examination of a long account. Of course, the character of the action is determined by the complaint. (*Welsh* v. *Darragh*, 52 N. Y. 590.) I concede all that is said in favor of the convenience of such a trial before a referee. But the argument *ab inconvenienti* has no force where the law is certain, as I conceive it to be the case here.

This action is founded upon a statute. Section 1969 of the Code of Civil Procedure, which authorizes it to be brought, is a re-enactment of chapter 49 of the Laws of 1875, which was passed after the decisions in the cases of *People* v. *Ingersoll* (58 N. Y. 1) and *People* v. *Fields* (Id. 491). In those cases it had been decided that no right of action vested in the people of the state for the recovery of moneys of the municipality illegally audited and paid to the defendant, for the reason that the title to the moneys paid was in the municipality and not in the state. The act in question was then passed to provide a new remedy against the frauds and illegal acts of public officers. By its provisions the people of the state were authorized to maintain such an action as this, to recover any money or property of a city, or county, or other division, or subdivision of the state, which had been obtained or received without right, "although a right of action for the same cause exists by law in some other public authority," etc. It will be observed that the statute recognizes and preserves the right of action in the city, county, or other political subdivision of the state, whose property has been wrongfully taken or received; but creates a new remedy for the wrong done to the public by permitting an action to be commenced by the attorney-general, in the name of the People. Such an action would be brought, presumably, only where, by reason of collusion, conspiracy, or by the operation of other like causes, the local authorities did not take the initiative. It would seem plain that the institution of an action by the people cannot be based upon any cause of action accruing to them through a breach of some duty or obligation owing from the defendant to them, but strictly through the permission of the statute, and in order that the results of a wrongful or fraudulent act might be further corrected in such a way. Punishment for an offense could be meted out to the offender by criminal procedure; but the legislature provides through this statute a civil remedy, also available to the people, under which the guilty party can be compelled to disgorge moneys wrongfully obtained through his criminality.

The precise point, then, on which the question turns is whether the action of the people can be deemed to be *ex contractu*. I say it cannot, and that to so hold would require us to ignore the legal definition of an express, or implied, contractual relation. A contract, whether it is express or implied, must of necessity grow out of some course of dealings between the parties. If moneys are had and received by a party, to which he is not justly and legally entitled, and which he should not retain, the law raises an implied promise from him to pay over their amount to the owner. No principle of the common law, or of equity, that I am aware of, would warrant their recovery by anyone other than the legal owner; that is the person entitled to their possession.

In this case the defendant was the county clerk of Herkimer county, and, it is alleged, while such officer, he wrongfully obtained the payment to himself of moneys of the county, through the presentation of illegal and excessive claims for fees and disbursements to the board of supervisors, whose authority to audit and allow the accounts is attacked. A judgment for the sums of money received is demanded against the defendant by the people. We might concede that the county of Herkimer had a cause of action against the defendant as for moneys had and received, because it was the county's moneys which had been illegally obtained, and the promise to repay, which the law would imply, would run to it. The implied obligation of the defendant to repay the moneys could not have been enforced by any other party, except for the intervention of the statute in question. By it, a suit for the moneys is authorized to be brought by the people, and, upon a recovery, the court is to direct the restoration of the moneys to their lawful custodian.

It is the bringing of the action by the authority of this statute, which first creates any title in the state to the property, the recovery of which is sought. That must be conceded. Then how can it be reasoned that the action arose on contract? I see no answer possible to the proposition. So that, assuming, for the purpose of the discussion, that the learned counsel for

the people is correct in the proposition, which he has argued so ably in his brief, his argument fails to meet the difficulty which I have endeavored to point out.

The people seek, by their complaint, to establish, as against this defendant, a claim for the recovery of certain moneys alleged to have been illegally and fraudulently obtained by him from the county of Herkimer, and, without the intervention of the positive, or statute, law, the action could not possibly be maintained, for want of any conceivable title or right in the state to the moneys. The source of the people's right of action, asserted here, is not in any contract, or obligation of the defendant, which the law implied in him when he received the moneys of the county, but it is in this statute, which was passed as a measure of public interest and benefit, and to permit the attorney-general to proceed against the wrong-doer in the name of the people. But, if not on contract, the action must be for tort, and his constitutional right would be violated if the defendant in such an action were refused a trial by jury.

As I read this law, if a person has tortiously obtained or converted the property of a city, or county, or other political subdivision of the state, the people of the state, in their sovereign capacity and through their attorney-general, may intervene and proceed against the wrong-doer to compel him to make restitution. Can we properly say that if they do, their action is founded upon contract? I think not, and, therefore, that the order below was right in reversing an order of reference and should be affirmed by us.

All concur with RUGER, Ch. J., except GRAY, J., dissenting, and EARL and O'BRIEN, JJ., taking no part.

Order reversed.