WILLIAM S. SMITH and Others, Taxpayers of Suffolk County, Respondents, *v.* DAYTON HEDGES, Appellant.

**Taxpayer's action — supervisors — action to review erroneous audit by board of supervisors for copying assessment rolls and extending lines of tax roll — court has no power to re-audit claim except on findings that audit was illegal for fraud, or collusion, or for lack of jurisdiction — definition of " line " on assessment roll.**

1. In auditing the claim of a supervisor for copying assessment rolls and extending lines of the tax roll, a board of supervisors has no jurisdiction finally to determine what constitutes a line for which the law allows a fee even though the claim is legal in form. An audit based on the total number of lines copied or extended may be either the result of a mere mathematical decision as to the number of lines or the decision of a question of law as to what constitutes a line. If the former, in the absence of fraud or collusion in the presentation and audit of the claim, the audit is final; if the latter, the audit is without jurisdiction if the decision is erroneous.

2. Although the claimant and the board act in good faith under legal advice and judicial decision in deciding erroneously what is a line for the copying or extending of which a fee may be charged, the audit is illegal and a taxpayer's action will lie.

3. The court has no power in a taxpayer's action to re-audit a claim except on findings of fact showing that the audit was illegal, either for fraud or collusion or for lack of jurisdiction, thus precluding honest mistake on the facts merely, as a basis of the audit.

4. A line on an assessment roll for copying or extending which a lawful charge may be made is one straight row of words and figures between the margins of the page, necessarily and properly a part of the roll. Section 23 of the County Law as it read in the years 1910–12 made no allowance for extending each tax on the same line as a separate line (*Pearsall* v. *Brower*, 120 App. Div. 584, disapproved), nor for totals of columns, recapitulations or totals of items. All allowances therefor were obtained by fraud if the board was deceived as to the facts or by an illegal audit, if the facts were known.

*Smith* v. *Hedges*, 169 App. Div. 115, reversed.

(Argued January 10, 1918; decided March 26, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 7, 1915, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathan L. Miller* and *John R. Vunk* for appellant. The audit, *i. e.*, the determination by the board of supervisors of the number of lines copied and extended, is conclusive, except on a direct review by certiorari or otherwise. (Cons. Laws, ch. 11, § 23; Cons. Laws, ch. 24, § 51; *Osterhoudt* v. *Rigney*, 98 N. Y. 222; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Knowles* v. *City of New York*, 176 N. Y. 430; *People ex rel. Smith* v. *Clarke*, 174 N. Y. 259; *Foy* v. *County of Westchester*, 168 N. Y. 180; *People* v. *Matthies*, 179 N. Y. 242; *People* v. *Sutherland*, 207 N. Y. 22; *N. Y. C. Protectory* v. *Rockland Co.*, 212 N. Y. 311; *Pearsall* v. *Brower*, 120 App. Div. 584.)

*Selah B. Strong* for respondents. A taxpayer's action overreaches any alleged audit, such as is found in the present case. (*Roosevelt* v. *Draper*, 23 N. Y. 318; *Brady* v. *N. Y.*, 35 How. Pr. 82; *Ely* v. *Connelly*, 7 Abb. Pr. [N. S.] 13; *Doolittle* v. *Supervisors*, 18 N. Y. 155; *Ayers* v. *Lawrence*, 59 N. Y. 192; *Osterhoudt* v. *Rigney*, 98 N. Y. 224; *Hicks* v. *Eggleston*, 103 App. Div. 73; *People ex rel. Cole* v. *Cross*, 87 App. Div. 56; *Matter of Town of Eastchester*, 53 Hun, 181; *McCoy* v. *McClarty*, 53 Misc. Rep. 69; *Annis* v. *McNulty*, 51 Misc. Rep. 21; *Shiebler* v. *Griffing*, 83 Misc. Rep. 363.)

POUND, J. This is a taxpayer's action. (General Municipal Law [Cons. Laws, ch. 24], § 51.) Defendant

12

was the supervisor of the town of Brookhaven in the county of Suffolk. Plaintiffs sue to recover charges, alleged to be illegal, collected by defendant in connection with the assessment rolls of the town for the years 1910, 1911 and 1912.

The County Law [Cons. Laws, ch. 11], section 23, as it then read, provided for a charge by the supervisor against the county for copying the assessment roll of " three cents for each written line for the first one hundred lines, two cents per line for the second hundred written lines, and one cent per line for all written lines in excess of two hundred, and one cent for each line of the tax roll actually extended by him." The assessment roll, as described in the Tax Law, consists of nine separate columns, including on one line in the first column the names of the taxable persons in the town, in the second a description of the real estate taxable to each person, in the third the assessed value of the real property, in the fourth the value of the taxable personal property, in the fifth the taxable rents, in the sixth the value of special franchises, in the seventh the total value of the property which is included in an incorporated village, in the eighth the amount of the tax levied against each person, in the ninth the date of payment of the tax. (Tax Law [Cons. Laws, ch. 60], § 21.) Only one general tax is provided for, but the same roll is used with extra columns on which are extended on the same line the local taxes, such as road tax and water tax. A separate column in each line contains the total tax. Separate lines contain the totals on a page. These column totals are unnecessary and not authorized by statute. The recapitulations are summaries of the entire tax. They are not a part of the assessment roll. The computation of the tax is made by multiplying the assessed valuation by the rate of taxation. The setting down of the tax in the proper column is the extension. Each page has a heading to the effect that it is the assessment roll

for the town. No fee was provided for the computation of the separate taxes. The defendant submitted bills to the board of supervisors, which were audited, allowed and paid, which included under a general charge — *i. e.*, not itemized — for so many lines copied, page headings and recapitulations, and for so many lines extended, each tax extended as a separate line, and also the computation and entry of footings and totals. He also made a charge for a second copy of the roll.

The trial court, with a finding that there was no fraud or collusion in the presentation and audit of this claim, and without findings to sustain the conclusion that there was lack of jurisdiction, proceeded to re-audit the defendant's claim and to disallow the charges, not only for the second copy but also so much of the bill as was for the computation and entry of footings and totals, under the head of lines extended, and for the copying of the headings of the assessment rolls.. For the year 1910 this resulted in the disallowance of 254,345 lines extended and 35,733 lines copied, and corresponding sums for the other two years. Judgment was ordered for restitution of the amount of illegal charges in the sum of $13,470.81.

The defendant asserts that the court below erred in making any reduction from the amount allowed by the board from the claim for copying and extending lines, because there was neither fraud nor lack of jurisdiction. (*Osterhoudt* v. *Rigney,* 98 N. Y. 222, 230.) The bill was legal in form. It was for lines copied and lines extended and it did not disclose the different kinds of lines which went to make up the total. In determining the question of jurisdiction the distinction is sometimes made between charges legal on their face and charges illegal on their face (*People* v. *Sutherland,* 207 N. Y. 22, 28), but the people, or the plaintiff in their right, may, notwithstanding the audit, recover back " charges illegal upon their face or charges *clearly prohibited by law.*" (*Peo-*

*ple* v. *Sutherland*, 207 N. Y. 22, 27.) Fraud practiced by defendant upon the board of supervisors, in the sense of a willful misstatement; the presentation of a false and excessive voucher, with intent to cheat and deceive, cannot be said to exist (*Nichols* v. *Pinner*, 18 N. Y. 295, 299), nor can it be said that the board of supervisors intended to cheat the county. But neither can it be said conclusively that there was a mere mistake in counting the lines, in deciding a mere question of fact, such as was held to preclude the court from reviewing the printer's bill in *People ex rel. Smith* v. *Clarke* (174 N. Y. 259). The difference is not in the counting of the lines, but in respect to what a line is. The question of the legality of these charges had been before the court in *Pearsall* v. *Brower* (120 App. Div. 584) and it had been held legal to charge for the extension of each tax as the extension of a separate line, on the theory that each tax *might* have been set out on a separate line. Thus each line was constructively divided into several lines. Out of this decision had grown the theory that the number of actual lines necessarily on the assessment roll could be enlarged so as to include many times the number of rows of figures forming the roll. Both the board of supervisors and the trial court accepted the ruling in the *Pearsall* case. The plaintiff has not appealed, the law had been amended to conform to the construction claimed for it, excepting, however, Suffolk county, where special provision is made (County Law, § 23, subds. 11, 13), and with the question there presented we have not at present directly to do. But we can readily understand how such a decision might give rise to sincere speculation as to the legal meaning of " a line copied " or " a line extended " and to a generous broadening of the liberal rule made by the court. While we may not take judicial notice of the fact that the supervisors knew that the general item included the

several items into which it has now been broken, to hear
that these questions had not been a topic of discussion
among the members of the board would strain our
credulity. The board had no jurisdiction knowingly to
allow charges clearly prohibited by law, even though
they were not illegal upon their face. To hold the
contrary would be to open a wide avenue of escape from
official responsibility. If the claimant knew and the
board knew the truth as to the nature of such charges,
no jurisdiction to audit them existed, and the presen-
tation of the claim and the audit would be a breach of
legal duty although good faith existed on both sides. If
the bill had been itemized, the audit of any illegal charges
would have been no protection. (*People* v. *Sutherland,
supra; Wadsworth* v. *Board of Supervisors, Livingston Co.,*
217 N. Y. 484.) The fact that the bill was not itemized
is relevant but not controlling on the question of juris-
diction. The board had jurisdiction to make an honest
mistake in counting lines, which would be final. It had
no ·jurisdiction finally to determine, as a question of
law, whether or not the law allowed a stated fee for a
stated service. If it actually made such a determination,
it was without jurisdiction if its determination was
erroneous. (*People ex rel. Smith* v. *Clarke, supra.*) To
decide this case as dependent upon mistake, which
precludes judicial review, or fraud, which permits it, seems
to ignore facts as they may have appeared to one on
the ground when the audit was made. The number
of lines charged for, something like a million in each
year, suggests the explanation. A board of supervisors
is a body of men consisting of supervisors. They audit
their own claims. The fair inference is that in ·a matter
like this they know something about the parts that go
to make up the whole of a lump charge. If they are
acting in good faith under legal advice and judicial
decision, we may absolve them of fraud in its ordinary

if not in its broadest sense, but that does not confer jurisdiction impregnable against collateral attack. If the charge had been for 600 days' work in the year 1910, the implication of constructive days charged for would have been clear. It is almost .as clear here that constructive lines were charged for and that no one was deceived by the generality of the charges.

The determination of a question of fact, not passed upon by the trial court, is essential to uphold a recovery by the plaintiffs. The trial court, as we have seen, found for the defendant on the question of fraud and collusion in the presentation and audit of the claim, but made no finding to sustain the judgment against him. It found merely that a certain number of the lines charged for were illegal charges. That was nothing more than a re-audit, as consistent with an original audit based on error as with an illegal audit. The case should be disposed of as it now stands on the question whether the charge, though legal on its face, was made and approved with knowledge that it embraced items which we hold to be illegal. It matters little whether such an audit is branded as fraudulent or as without jurisdiction. It is illegal with either brand. If the board was deceived, there should have been a finding of fraud; if it was not deceived, the. fact of knowledge should have been found.. The illegal portions of the claim, so far as this appeal presents them, include the lines representing the recapitulations, the footings and the totals. The headings of the pages were probably " lines copied," although, strictly speaking, they were no part of the assessment roll.

As a new trial must be had, it may be suggested that a line in a tax roll means the same as a line elsewhere. It is a straight row of words and figures between the margins of the page, as we say " thirty lines to the page." When one is paid by the line one ought not to put in a single line what might with propriety be put in two or

more lines and then complain because some one insists on counting the lines as they were written. Unnecessary additions to the assessment roll, such as totals of columns, recapitulations and totals of items, are not parts of it. Parts of lines and superfluous lines may not be lawfully charged for as such.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, J. (dissenting). I am unable to concur in the reversal of this judgment.

The defendant by a false voucher supported by a false affidavit procured the audit and allowance of his claim. His only excuse is that he did not wish to deceive, but misunderstood the law. We are about to hold that the excuse is a good one; that there is no way to get the money back if the supervisors were misled; that concealment of the truth has conferred a jurisdiction which disclosure would have destroyed; and that a claimant whose misrepresentation has induced an audit, may invoke it as a bar. Only some overmastering principle or precedent could justify that conclusion. I do not think they can be found.

The cases say that to nullify an audit in an independent action at the instance either of the people or of a taxpayer, there must be something more than error. There must be fraud or lack of jurisdiction (*Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People* v. *Sutherland,* 207 N. Y. 22). But the fraud which will be sufficient for that purpose has never been defined; there has been no occasion to distinguish between willful and innocent misstatements. General rulings abound that when fraud is shown, the audit falls (*People* v. *Wood,* 121 N. Y. 522, 529; *Nelson* v. *Mayor, etc., of N. Y.,* 131 N. Y. 4). The presentation of false and excessive vouchers has been spoken of as equivalent to fraud (*People* v. *Wood, supra;*

*Hicks* v. *Eggleston,* 105 App. Div. 73). The audit has been declared void though the auditing officer was innocent, and the claimant alone guilty (*Hicks* v. *Eggleston, supra*). But beyond that, there has been neither attempt nor occasion to define the limits of relief. Courts do not weary of cautioning counsel to distinguish dictum from decision. They must heed their own warnings.

In this case, the findings say that there was no fraud or collusion. Misrepresentation, though innocent, there was. The defendant misstated the number of lines copied and extended. He has been acquitted of willful wrong. He misconceived his rights. He attempted in good faith to apply a ruling of a high court which seemed, not without show of reason, to justify his count. His purpose was innocent, but his affidavit was false. That is a fair construction of the findings when we read them as a whole. What controls is the defendant's conduct, and not the epithets attached to it (*Coleman* v. *Burr,* 93 N. Y. 17, 31).

I think that misrepresentation, whether willful or unwitting, vitiates the audit. A claimant cannot procure through false statements the allowance of his claim, and then interpose the allowance as a bar to restitution. There may not have been that reckless indifference to error or that pretense of exact knowledge which will sustain an action for deceit (*Hadcock* v. *Osmer,* 153 N. Y. 604; *Kountze* v. *Kennedy,* 147 N. Y. 124). But imposition of less degree has many of the consequences of fraud, and in equity at least is often loosely spoken of as fraud (*Hammond* v. *Pennock,* 61 N. Y. 145, 152; *Nocton* v. *Ashburton,* 1914, A. C. 932, 954). There is a distinction between the wrong that justifies rescission and the wrong that leads to an award of damages (*Hammond* v. *Pennock, supra; Carr* v. *Nat. B. & L. Co. of Watertown,* 167 N. Y. 375, 379). Innocent misrepresentations, if they induce a contract, are ground for setting it aside

(*Bloomquist* v. *Farson*, 222 N. Y. 375; *Canadian Agency, Ltd.*, v. *Assets Realization Co.*, 165 App. Div. 96, 102, collating all the cases). I think a like effect follows when they induce the audit and allowance of a claim upon the public treasury. At least that must be so when disclosure of the truth would prove the claim illegal and take from the auditing body jurisdiction to allow it.

*People ex rel. Smith* v. *Clarke* (174 N. Y. 259) holds nothing to the contrary. In that case there was evidence that the board of supervisors had erred; there was no evidence that misstatements of the claimant had brought about the error. A different situation is before us here. There is here no attempt to convict the board of error. The claimant's affidavits were sufficient on their face. They did not show the method of computation; they gave the totals, and nothing else. The members of the board were under no duty to count for themselves a million lines or more. They might lawfully accept the affidavit of one who had made the count (County Law, sec. 24), just as a court in determining a like question might accept the testimony of a witness. The record makes it certain that this is what they did. I agree that disclosure of the truth would have destroyed their jurisdiction (*People* v. *Sutherland, supra; Bd. of Supervisors, Richmond Co.* v. *Ellis*, 59 N. Y. 620; *Lyddy* v. *L. I. City*, 104 N. Y. 218; *People* v. *Journal Co.*, 213 N. Y. 1; *Wadsworth* v. *Bd. of Supervisors, Livingston Co.*, 217 N. Y. 484). But there is no need of another trial. The defendant is in this dilemma: either the board had knowledge or it had not. If it had knowledge, allowance was beyond its power. If it had no knowledge, it was misled. The award would have been voidable if the truth had been disclosed. The remedy cannot be cut off by filing a false statement through which disclosure is avoided.

I dissent from the ruling that a misrepresentation, which misleads, confirms and sanctifies an audit. I am unwilling to believe that there is then no power in the courts to extricate the county from the tangle in which the claimant has involved it by a false affidavit. While the broad statutes authorizing suits by taxpayers (Gen. Mun. Law, sec. 51) and by the People (Code Civ. Pro. sec. 1969) remain upon the books, I cannot vote to commit our law to so impotent a conclusion. The scope of the taxpayer's action has steadily expanded (*Altschul v. Ludwig,* 216 N. Y. 459). This case is fairly within its purpose. We must not limit the just effectiveness of the remedy by any narrow construction. The defendant may have been innocent when he induced the board to act. He is not innocent to-day when he takes advantage of his own wrong and clings to payments won through his suppression of the truth (*Redgrave v. Hurd,* L. R. 20 Ch. D. 1, 12, 13). Of such conduct we are now asked to say that, within the purview of these statutes, it is neither a waste of public funds nor a fraud on public rights. We have never said so yet. We should not say so now.

The judgment should be modified by deducting the payments made for copying the headings of the assessment rolls, which, I think, were proper charges, and as modified affirmed.

HISCOCK, Ch. J., COLLIN and CUDDEBACK, JJ., concur with POUND, J.; CARDOZO, J., reads dissenting opinion, and HOGAN and ANDREWS, JJ., concur.

Judgment reversed, etc.