PHILIP ENGEL and JACOB TIPPLE, as Taxpayers of the Town of Ghent, Columbia County, State of New York, Plaintiffs, v. GEORGE R. GARNER, Formerly Town Superintendent of the Town of Ghent, Columbia County, State of New York, Defendant.

(Supreme Court, Columbia County, July, 1921.)

Public officers — taxpayer's action — illegally receiving public moneys — restitution — Penal Law, § 1868.

A public officer receiving public moneys illegally and without right may be charged with the duty of restitution even though there may be an audit or settlement made by some other official or auditing body, but audit cannot give validity to an act condemned by statute and which in itself is illegal and void.

Under section 1868 of the Penal Law the acts of a town superintendent of highways in furnishing materials and supplying the labor of his own team on orders of the supervisor for the benefit of the town are illegal, and where, after audit and approval of the town board, said superintendent of highways receives payment on orders drawn by himself on the supervisor, he is liable in a taxpayer's action to compel a refund of the money to the town, and judgment will be entered directing restitution of the concededly fair and reasonable amount which he received and directing payment thereof by him to the town.

Plaintiffs having failed to sustain the greater number of the allegations of their complaint, amended to conform to the proof in relation to the sale and delivery of the materials by defendant to the town, the judgment to be entered will be without costs.

ACTION brought in behalf of certain taxpayers against the defendant, a former town superintendent of highways.

R. Monell Herzberg, for plaintiffs.

William B. Daley, for defendant.

ROSCH, J. This action is brought by the plaintiffs, who are taxpayers of the town of Ghent, Columbia

19

county, N. Y., against the defendant, a former town superintendent of highways of that town. The plaintiffs claim that the defendant fraudulently and illegally presented false and excessive claims against the town of Ghent, as its town superintendent, in the year 1919, and make eleven specific charges against the defendant of having presented illegal and false orders against the bridge fund of the town.

Upon the trial of the action a number of these claims were abandoned, and as the matter is now presented to me for determination, the plaintiff seeks to sustain two separate items, one in the sum of $180.36 based upon the various vouchers issued by the defendant to himself, and drawn upon the supervisor in payment for the use of the defendant's team; another item amounting to $186, based upon orders presented by the defendant to the supervisor for lumber, sleepers, oak plank and bridge materials furnished by the defendant to himself as town superintendent of highways.

The plaintiff's complaint, outside of the claim made in subdivision 9 of the 4th paragraph of the complaint, is based upon allegations that the defendant presented various orders separately referred to in the complaint against the bridge fund of the town for money on account of materials claimed to have been furnished on certain bridges, and alleges further that the amount of materials furnished upon the certain bridges stated was not furnished but a less amount, making illegal, fraudulent and excessive charges, as certified by the voucher and as paid to the defendant upon his presentation thereof.

Under the evidence I am satisfied that the allegations as to the illegal, fraudulent and excessive charges for materials were not in any way sustained. I am convinced from the proof that the bridges

referred to in the complaint and the order were nothing but designation of localities of several bridges on which the materials were used.

Upon the trial of the action, however, it appeared that of the lumber and materials used for bridge purposes in 1919, the defendant, as town superintendent, furnished, sold and received pay from the bridge fund, $186 on account of materials which he had furnished himself. At the conclusion of the trial the plaintiffs asked to amend their complaint, by alleging " that the said defendant, in the year 1919, presented to one Charles D. Vosburg, supervisor of the said town of Ghent, orders for the payment to himself of money for the purchase of lumber, sleepers, oak plank and bridge materials, payable from the bridge fund, in the sum of $186, and was paid therefor, and that such orders were illegal, and that the said town superintendent had no power under the law to purchase from himself any material or to make any contract with himself." Upon the application to amend, decision was reserved and the whole case was submitted for decision.

The case was tried on the theory of the complaint that certain materials were paid for, which in fact had not been furnished. Upon the conclusion of the trial, the plaintiff seeks to abandon the contention that the lumber was not furnished and amend by alleging that the town superintendent had furnished at least a part of the material himself, for which he had drawn orders payable to himself, and which were honored by the supervisor and paid.

The mere defect in form in relation to the orders issued for bridge material, in view of the fact that I am satisfied the town has received all of the material for which it has been charged, would not sustain the illegal and fraudulent charges made by the plaintiffs.

I am satisfied under the evidence that the materials have all been furnished, and the claimed defects in the orders upon the supervisor, especially in view of the subsequent audit and approval of the town board, would not make it inequitable or illegal that the moneys be retained. I am satisfied that the various orders issued were for materials actually furnished and used for the benefit of the town.

The evidence is before the court in relation to the furnishing of lumber by the defendant to the town while he was acting as its town superintendent of highways, and although I have some doubt as to my power to grant the amendment to the complaint, I feel that the whole controversy should be disposed of, because there is no question in the case but that the defendant did furnish lumber for which he received $186, and which was furnished to himself for the town while acting as its town superintendent of highways. Neither is there any question but that the defendant received in 1919, during his term of office, $180.36 for the use of his own team. Both of these propositions appear as established, and it can be said that the defendant cannot be accused of attempting to have carried on the transactions except in the best of faith, because for the furnishing of materials he had the orders drawn to himself and they were presented to the supervisor and by that official accepted. They were subsequently submitted to the town board, and by that body audited. As to the use of his team, it was done with the knowledge of the supervisor and members of the town board, and in a previous year a resolution had been passed by the town board authorizing him to use his team in the road work, and under that resolution he continued to use his team openly and with the knowledge of the other town officials. Neither is it urged nor, as I view the proof, could it

be consistently urged that the charges made are anything but fair and reasonable.

In view of the conclusion at which I have arrived, the case resolves itself into a very concise legal question. Is the defendant liable to refund to the town the money which he received for lumber furnished by himself and for the labor of his own team? In arriving at an answer to this inquiry, it must first be conceded that the act of furnishing the lumber and the act of supplying the labor of his own team by the defendant while town superintendent of highways was illegal. Penal Law, § 1868. The act was not alone illegal under the statutes, but was illegal and comes within the condemnation of the rules of the common law. *Beebe* v. *Supervisors,* 64 Hun, 377. In that case it was said: " The illegality of such contracts does not depend upon statutory enactments, they are illegal at common law. It is contrary to good morals and public policy to permit municipal officers of any kind to enter into contractual relations with the municipality of which they are officers." In *Smith* v. *City of Albany,* 61 N. Y. 444, 446, the court said: " If * * * the seller were permitted, as agent of another, to become a purchaser, his duty to his principal and his own interest would stand in direct opposition to each other; and thus a temptation, perhaps in many cases too strong for resistance by men of feeble morals, or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross conduct and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy encouraged by the purest principles of Christianity. This doctrine is well settled at law, and it is by no means necessary in cases of this sort that the agent should make any

advantage by the bargain. Whether he has or not the bargain is without any obligation to bind the principal.'' In *People ex rel. Schenectady Ill. Co.* v. *Board of Supervisors,* 166 App. Div. 758, it is well stated in relation to this form of transactions, that '' It is the fixed policy of the law to avoid this and to avoid all the manifold evils and temptations which are sure to grow out of it. The amount involved is insignificant; but it is not substance, it is principle, with which we are dealing.''

A public officer receiving public moneys illegally and without right may be charged with the duty of restitution. This may be done even though there may be audit or settlement made by some other official or auditing body. The audit would protect the public officer where the action of the auditor is attacked on the ground that the proof was not sufficient to warrant the payment. Audit, however, will not give validity to an act which is condemned by the statute, and which in itself is illegal and void. *Stetler* v. *McFarlane,* 230 N. Y. 400.

In the case last cited, and recently decided by the Court of Appeals, is found this language: '' We think a public officer receiving public moneys without right may be charged with the duty of restitution at the instance of a taxpayer though he received them without fraud (*Smith* v. *Hedges,* 223 N. Y. 176). Audit in good faith may serve to establish right when the action of the auditors is assailed on the ground of error in the estimate of evidence (*Smith* v. *Hedges, supra*). Audit, however innocent, does not avail as a retroactive grant of power, to give validity to action in excess of jurisdiction (*Smith* v. *Hedges, supra*). We must distinguish the liability of those who receive from the liability of those who pay. Payment to another without profit to one's self will not expose to

liability at the instance of a taxpayer after the transaction has been executed without fraud or willful wrong (*Wallace* v. *Jones,* 195 N. Y. 511; *Daly* v. *Haight,* 224 N. Y. 726). The result will not be changed, it seems, though the one who profits is a joint defendant, if joint relief is claimed (*Wallace* v. *Jones; Daly* v. *Haight, supra*). Fraud in such cases has been treated as the gist of the conspiracy. We need not now inquire whether that is always the sound view. Here there is but one defendant, the public officer who retains to his own use the moneys which, if collected without right, are still the moneys of the county. *Smith* v. *Hedges* (*supra*) sustains the remedy of a suit by taxpayers in its application to such conditions. The right of action does not find its sole basis in those parts of section 51 of the statute (General Municipal Law [Cons. Laws, ch. 24]) which were considered in *Wallace* v. *Jones* and *Daly* v. *Haight.* It rests as well upon the opening sentences of the section which broadly impose the duty of restitution when moneys, in the hands of a public officer, of right belonging to the public, are wrongfully withheld. The remedy at the suit of taxpayers has steadily widened in scope since its beginnings in 1872 (L. 1872, ch. 161; *Altschul* v. *Ludwig,* 216 N. Y. 459). We have said that the statutes which define it are to be liberally construed (*Ayers* v. *Lawrence,* 59 N. Y. 192, 196). We are unwilling by any narrow interpretation, by any emphasis on verbal niceties, to give exemption to the public officer in possession of public moneys who retains them for himself. The character of such moneys, while in the hands of the delinquent officer, is not changed, in respect at least of civil remedies, because the retention is under claim of right. They are held to the public use unless the claim can be sustained (*People* v. *Wood,* 121 N. Y. 522; *People* v.

*Sutherland,* 207 N. Y. 22). We do not now determine the application of the statutory remedy to other situations. Sufficient for present purposes is the decision of the case before us.''

The defendant cites *Bush* v. *Coler,* 60 App. Div. 56; affd., 170 N. Y. 587; *Bush* v. *O'Brien,* 164 N. Y. 205, and *Shoemaker* v. *Buffalo Steam Roller Company,* 165 App. Div. 836, contending that they hold it is necessary for the plaintiff to show that the town funds were wasted and were disbursed in payment of claims which had no substantial basis of benefit to the town for their support. An examination of the cases cited makes them easily distinguishable. *Bush* v. *Coler,* 60 App. Div. 56, afterwards affirmed in 170 N. Y. 587, was an action brought against the comptroller of the city of New York, and other defendants, on account of the payment of a judgment of $4,000 against the city of New York, wherein the comptroller had been directed by mandamus to pay the same. The court held that the judgment sustaining the demurrer to the complaint should be affirmed. The case of *Bush* v. *O'Brien,* 164 N. Y. 205, was an action brought against the defendants and the comptroller of the city to restrain certain of the defendants from collecting, and the comptroller of the city from paying, certain judgments which the demurring defendants had obtained against the city of New York, amounting in the aggregate to $700,000, and which judgments were entered upon offers of judgment against the city or by the corporation counsel. This case was also decided upon the question as to the sufficiency of the plaintiff's complaint. The case of *Shoemaker* v. *Buffalo Steam Roller Company,* was an action brought to set aside a contract made by the Buffalo Steam Roller Company, with a town board, for the sale of a steam roller, under an agreement which pretended to be a leasing,

but which was in fact an agreement for sale. The agreement as an agreement for sale was illegal. The plaintiff in the taxpayers' action sought to have refunded the sum of money paid by the town to the steam roller company, and which had been paid under the agreement. The court in that case stated that the contract of purchase violated the requirement of the Highway Law prescribing the conditions and manner by which such a machine might be purchased, but also stated that the same officials who made the contract in question had the authority to lease a roller for the use of the town and in the repairing and improvements of its highways; and that in view of the fact that the town had had the beneficial use of the roller furnished by the defendant under contract with the town, which in itself might have been illegal, but having enjoyed the benefits of its use, and there being a statute expressly authorizing a contract in behalf of the town for such use as was made of it, that the town was liable upon a *quantum meruit,* and that no recovery of the money paid in behalf of the town to the steam roller company should be had in that action. From the language referred to, it can well be urged that the decision in the *Shoemaker* case would have been much different, and there would have been a restitution required by the roller company if there had not been a provision of the Highway Law giving the officials of the town authority to lease a roller for the use of the town and for the repair and improvement of its highways.

In the case under consideration, the payments were illegal and void. They were not only not authorized by statute but condemned by statute and the common law. The other cases cited by the defendant are distinguished in the case of *Stetler* v. *McFarlane, supra,* wherein it is held that fraud or willful wrong are not

necessary, where there is but one defendant, and that is the public officer who retains to his own use moneys which if collected without right are still moneys of the municipality.

I am not unmindful; in arriving at the conclusion in this case which I have arrived at, that it is requiring the defendant to refund to the town moneys for labor and materials which the town itself has received and enjoyed the benefit of; but this is one of that class of cases which cannot be decided upon the individual circumstances and incidents, but must be decided upon the general principles of law applicable to the official relation of individuals to their employer, especially where the employer is a municipality.

I have decided to permit the amendment of the plaintiff's complaint to conform to the proof in relation to the sale and the delivery of the lumber by the defendant himself to the town. I, therefore, conclude that judgment should be entered directing the restitution of the sum of $366.36, and its payment by the defendant to the town of Ghent, which sum is made up of the two separate items referred to in my opinion.

As to the other claims in the plaintiff's complaint which have not already been withdrawn by the plaintiff, I direct the dismissal of the same. In view of the allowance of the amendment, and in view of the fact that I am satisfied that there is no fraudulent conduct on the part of the defendant, in view of the failure of the plaintiffs to sustain the greater number of their allegations, I direct that the judgment be entered without costs. Such seems to be a proper disposition in this class of cases. *Glasser* v. *City of Buffalo,* 115 Misc. Rep. 88; *Glasser* v. *City of Buffalo,* Id. 91.

Judgment accordingly.