LILLIAN TRAVER CARR, Respondent, *v.* THE NATIONAL BANK
AND LOAN COMPANY OF WATERTOWN, Appellant.

1. PRINCIPAL AND AGENT — LIABILITY OF BANK FOR FALSE REPRE-
SENTATIONS MADE BY PRESIDENT TO PURCHASER OF SECURITIES HELD
BY IT FOR WHOM HE ACTED IN A FIDUCIARY CAPACITY. One who,
without knowledge that her agent also acted as the agent of a national
bank of which he was the president and manager, and without knowledge
in relation to them or their ownership, is induced by him to purchase
securities belonging to the bank, relying wholly upon his representations
that they were "first mortgage bonds, first-class securities, as good as
gold, and that he had gotten them expressly for her," when in fact they
were second mortgage bonds, were neither first-class securities, nor had
they been procured expressly for her, and were sold at a profit to the bank,
may maintain an action against the bank upon the discovery of the falsity
of the representations for a rescission of the transaction, without proof of
actual fraud, since proof of fraudulent motive on the part of the defend-
ant or the common agent is not required to avoid the purchase, there being
such fraud in law as to make it voidable at the election of the plaintiff.

2. PRINCIPAL CAN REAP NO BENEFIT FROM WRONGFUL ACT OF AGENT.
The objections that the acts of its president were individual acts, and the
buying and selling securities were not within the scope of its powers, and,
therefore, the defendant could not be subjected to liability, are without
force, since the plaintiff did not know that she was dealing with the
defendant through its president, and whatever the limitations upon its
powers, they cannot prevent the operation of the rule which forbids a
principal from reaping any benefit from the wrongful act of his agent.

*Carr* v. *Nat. Bank & Loan Co.*, 43 App. Div. 10, affirmed.

(Argued May 8, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
July 27, 1899, affirming a judgment in favor of plaintiff
entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff for the rescission
of a transaction, in which certain bonds belonging to the
defendant were sold to, and purchased by, her. She recov-
ered a judgment entitling her to disaffirm the transaction and
declaring the bonds to be the property of the defendant, sub-
ject to the payment of the amount of the plaintiff's recovery
for their face value and unpaid interest; which judgment has

been unanimously affirmed by the Appellate Division, in the fourth department. The findings of the trial court established the following facts. The plaintiff, upon the death of her husband, came into the possession of moneys, which were payable upon policies of insurance issued upon his life. George H. Sherman was the president and the manager of the defendant and he induced the plaintiff to allow him to invest her moneys, upon his representation that he could do so in sound and safe securities, yielding six per cent annually. The plaintiff assented and, as the moneys were paid to her, turned them over to him and he deposited them with the defendant bank. From time to time, he withdrew them and paid them to the defendant in purchase of certain bonds theretofore acquired by it; which were thereupon transferred to the plaintiff and kept in the bank for her. In this transaction Sherman acted as the plaintiff's personal friend and she relied wholly upon his representations and judgment; taking no active part in the purchase of the bonds and having no knowledge in relation to them, or as to their ownership. He stated to her, in response to inquiries, that they were " first mortgage bonds, first-class securities, as good as gold and that he had gotten them expressly for her." These purchases were made by Sherman during the years 1892 and 1893. The bonds were, in fact, second mortgage bonds and were not first-class securities, nor had they been expressly procured for the plaintiff's investment. In 1896, she discovered the falsity of Sherman's representations and that he had been acting for the defendant in selling these bonds, at a profit of five per cent to it. Defaults occurred in the payment of the interest coupons upon the bonds; but the coupons maturing were taken up and cashed by the defendant and plaintiff was informed that the default was due to temporary causes, and further representations of a reassuring character were made; whose falsity was, also, discovered. Upon the plaintiff's discovering the falsity of Sherman's representations and the bank's interest in the matter, she tendered all the bonds to the latter and demanded their face value; which she had paid for them, with interest, etc.

*John Lansing* for appellant.   The facts found by the court do not establish any actual fraud on the part of the defendant in the sale of the bonds to the plaintiff. (L. 1897, ch. 417, § 26; *G. R. Nat. Bank* v. *Mead*, 92 N. Y. 637; *S. C. P. Co.* v. *Wing*, 85 N. Y. 421; *Cutler* v. *Hernz*, 13 N. Y. S. R. 333; *Jaeger* v. *Kelley*, 52 N. Y. 274; *Oberlander* v. *Spiess*, 45 N. Y. 175; *Daly* v. *Wise*, 132 N. Y. 306; *Salisbury* v. *Howe*, 87 N. Y. 128; *Wakeman* v. *Dalley*, 51 N. Y. 27; *R. P. Co.* v. *O'Dougherty*, 36 Hun, 79; 99 N. Y. 673; *Meyer* v. *Amidon*, 45 N. Y. 169.)   The plaintiff, by not moving promptly to rescind the contract of sale of the bonds as soon as she had reason to suppose that the bonds were not what she supposed, has lost the right to rescind. (*Cobb* v. *Hatfield*, 46 N. Y. 533; *Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75; *Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Schiffer* v. *Dietz*, 83 N. Y. 300.) The defendant is not liable, because no authority is shown to have been given by the directors of the defendant to deal in the bonds in question, or like bonds.   It is not within the regular business of a national bank to buy and sell bonds. (U. S. R. S. § 5136; *Jemison* v. *C. S. Bank*, 122 N. Y. 135; *W. Nat. Bank* v. *Armstrong*, 152 U. S. 351; *F. Nat. Bank of Allentown* v. *Hoch*, 80 Penn. St. 324.) If there was a fraud on the part of Sherman or misrepresentations made to the plaintiff at the time of the purchase of the bonds, or any of them, by her, the defendant is not liable. As the buying and selling of bonds was not within the scope of the corporate powers of the defendant, a national bank, it is not responsible for the fraudulent acts of its officers in such a case. (*Weckler* v. *F. Nat. Bank*, 42 Md. 581; *Talmage* v. *Pell*, 7 N. Y. 328; *Dresser* v. *F. Nat. Bank*, 42 N. E. Rep. 567; *F. Nat. Bank* v. *Nat. Bank*, 92 U. S. 122; *L. Co. Nat. Bank* v. *Townsend*, 139 U. S. 67; *California Bank* v. *Kennedy*, 167 U. S. 362; *McCormick* v. *Market Bank*, 165 U. S. 538; *Nat. Bank* v. *Stewart*, 107 U. S. 676.)   The contract of sale being illegal as being *ultra vires*, and having been executed by both parties, neither party can rescind the contract. but the parties will be left as they have placed them

48

selves. (*Thomas* v. *R.·R. Co.*, 101 U. S. 71; *Thompson* v. *St. Nicholas Bank*, 146 U. S. 240.)

*Elon R. Brown* for respondent. Defendant's president became the agent of the plaintiff in the investment of her funds. Without her knowledge that the bank was interested in these bonds, he sold her the bonds, thus acting in a double capacity for the bank and for her. The plaintiff was, therefore, entitled to rescind the contract. (*Conkey* v. *Bond*, 36 N. Y. 427; *Mayo* v. *Knowlton*, 134 N. Y. 250; *Taussig* v. *Hart*, 58 N. Y. 425; *Bruce* v. *Davenport*, 36 Barb. 349; *N. Y. C. Ins. Co.* v. *N. T. Ins. Co.*, 14 N. Y. 85; *Murray* v. *Beard*, 102 N. Y. 505; *E. S. Ins. Co.* v. *A. C. Ins. Co.*, 138 N. Y. 446; *Knauss* v. *K. B. Co.*, 142 N. Y. 70; *Ritt* v. *W. M. & F. Ins. Co.*, 41 Barb. 353; *U. Ins. Co.* v. *T. Ins. Co.*, 17 Barb. 134.) While it was unnecessary for the plaintiff to prove actual fraud, fraud was in fact established against the defendant. (*Fairchild* v. *McMahon*, 139 N. Y. 290; *Rothschild* v. *Mack*, 115 N. Y. 2; *Daly* v. *Wise*, 132 N. Y. 306; *Hickey* v. *Morrell*, 102 N. Y. 454; *Caylus* v. *N. Y., K. & S. R. R. Co.*, 76 N. Y. 609.) An equitable action to rescind a contract may be based upon the misrepresentation or suppression by the defendant of a material fact without proof of an intent upon his part to defraud. (*Hammond* v. *Pennock*, 61 N. Y. 145; *Fairchild* v. *McMahon*, 139 N. Y. 294; *A. S. R. Co.* v. *Fancher*, 145 N. Y. 559; *Gould* v. *C. Co. Nat. Bank*, 86 N. Y. 75; 99 N. Y. 333; *Yeomans* v. *Bell*, 151 N. Y. 230; *Allerton* v. *Allerton*, 50 N. Y. 670; *Vail* v. *Reynolds*, 118 N. Y. 297; *Berry* v. *A. C. Ins. Co*, 132 N. Y. 49.) The defense of *ultra vires* is not available to the defendant in this action. (*L. Nat. Bank* v. *Townsend*, 139 U. S. 67; *McCormick* v. *Market Bank*, 165 U. S. 538.)

GRAY, J. The unanimous affirmance by the Appellate Division of the judgment, which was awarded to the plaintiff by the trial court, conclusively establishes all the foregoing facts and the legal question is whether they warranted the con-

clusion that the plaintiff was entitled to disaffirm the sales of the bonds to her. The appellant argues that the facts did not establish any actual fraud on the part of the defendant. But that was not essential to the granting of the relief which plaintiff demanded. There was shown to have been such a condition of things, in the situation of the parties and in the ignorance in which the plaintiff was kept of material facts, by ways of suppression, or of misrepresentation, as, in equity, to warrant her in wholly repudiating the transaction. It is quite immaterial that there may have been no intention to actually defraud. (*Hammond* v. *Pennock*, 61 N. Y. 145.) The plaintiff supposed that she had enlisted the disinterested services of Sherman in the investment of her moneys, and, relying upon what he told her, confided them to him; whereas, in fact, he was acting for the bank, of which he was president and manager, in disposing, at a profit, of a series of securities, which it had acquired. He was acting for the defendant as a seller of the bonds and for the plaintiff as an intending purchaser, and a fraudulent motive was not necessary to be proved, either on the defendant's part, or on that of the common agent, for, in the view of a court of equity, there was such fraud in law as to make the contract a voidable one, at the election of the plaintiff. The plaintiff has been made to suffer her loss through misplaced confidence in one whom she believed to be devoted to her interests, while, at the time, he was acting for the defendant's, and the legal theory of her right to equitable relief, by the way of rescission, rests upon the basis that Sherman undertook to act as the agent of both parties in a matter where their interests were, for obvious reasons, to be regarded as conflicting. In such cases equity will, upon the seasonable application of a party, avoid the transaction and this right is conceded, without reference to any actual fraud. A binding transaction requires the free and conscious action of the party's mind upon its subject. The general equitable doctrine should be regarded as well settled. (Story on Agency, § 31; *Copeland* v. *Ins. Co.*, 6 Pick. 198; *New-York Central Ins. Co.* v. *National Protec-*

*tion Ins. Co.*, 14 N. Y. 85; *Conkey* v. *Bond*, 36 *ib.* 427; *Murray* v. *Beard,* 102 *ib.* 505; *E. S. Ins. Co.* v. *A. C. Ins. Co.*, 138 *ib.* 446.) There is no question but that plaintiff acted promptly upon her discovery of how Sherman had acted, in tendering back, at once, the bonds to the defendant, in disaffirmance of the transaction.

The appellant argues that what Sherman did was his individual act, for which it should not be held responsible; and, further, that as it could not, being a national bank, engage in the business of buying and selling securities, its officers could not subject it to any liability by reason of such transactions. It is sufficient to say, in answer to that objection, that the plaintiff did not know that she was dealing with the defendant through Sherman as one of its officers, and that, whatever the limitations upon its powers, they cannot interfere with the just operation of the rule in equity, which forbids a principal from reaping any benefit from the wrongful act of his agent. (*Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 75.) No such extraordinary immunity was conferred upon national banks. Then, it is to be observed that the effect of the plaintiff's action is, simply, by avoiding the whole transaction into which she was falsely led by defendant's agent, to place the parties in the same position as they were in before it occurred.

The question of *ultra vires*, which defendant raises, has no place in the case. The plaintiff did not know the defendant in the transaction, and she is not seeking to avail herself of anything that Sherman did for it. She asks to be restored to the possession of her property, of which she was unfairly deprived to the defendant's advantage, through its agent's misconduct, and upon the plainest principles of equity she was entitled to her judgment.

The judgment should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, VANN and WERNER, JJ., concur.

Judgment affirmed.