[Civ. No. 271.    Third Appellate District.—December 17, 1906.]

## DANIEL KEVANE, Respondent, v. H. W. MILLER, Appellant.

AGENCY—SUPPORT OF FINDINGS—CONFLICTING EVIDENCE—APPEAL.—In an action involving the existence of an agency of the defendant for the plaintiff, and his liability to the plaintiff as a principal, where the trial court found for the plaintiff upon substantially conflicting evidence as to the existence of the agency, its finding as to that fact will not be disturbed upon appeal.

ID.—AUTHORITY TO PURCHASE STOCK—MISREPRESENTATION BY AGENT —DELIVERY TO PRINCIPAL AT INCREASED PRICE—LIABILITY OF AGENT.—Where plaintiff authorized defendant to purchase stock for him for $1,500, and defendant misrepresented to plaintiff that it could only be obtained for $2,900, and was authorized to purchase it for that sum, and defendant purchased it for $1,500, and delivered it to plaintiff for $2,900, defendant, as agent, is liable to plaintiff, as principal, for the difference of $1,400, which sum plaintiff is entitled to recover from defendant.

ID.—LIABILITY OF GRATUITOUS AGENT.—One who undertakes a gratuitous agency, though not bound to the same degree of care and diligence as an agent for hire, is bound to exercise good faith, and has no greater license to indulge in misrepresentations, concealment or other breaches of good faith than an agent for hire. While he cannot be compelled to undertake the service, nor be mulcted in damages for failure to do so, yet when he enters upon its performance, he is, in common with all other agents, bound to exercise the utmost good faith in dealing with his principal, and he will not be permitted to lay down his burden when profit to himself results from detriment suffered by the principal.

ID.—CLAIM OF PURCHASE AND OWNERSHIP—FACTS NOT DISCLOSED.—The gratuitous agent cannot relieve himself from liability by communicating to the principal the fact that he had purchased the stock and was the owner of it, where he did not disclose the fact that

he had purchased it for the first price authorized, and was making a profit of $1,400 upon his purchase.

ID.—RULINGS UPON EVIDENCE—INSUFFICIENT ARGUMENT UPON APPEAL. Where the only argument upon appeal as to rulings of the trial court upon the admission and exclusion of evidence is that they were erroneous and prejudicial, this court is not called upon to prosecute an independent inquiry for reasons for and against the correctness of the rulings. *Held,* in this case, that no error prejudicial to appellant is discovered upon examination of the errors assigned.

APPEAL from a judgment of the Superior Court of Sacramento County. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, and W. F. Cowan, for Appellant.

Copeland & Harris, and A. A. De Ligne, for Respondent.

McLAUGHLIN, J.—This is an action to recover the sum of $1,400 alleged to be due from appellant to respondent by reason of the fact that the former, while acting as the special agent of the latter for the purchase of certain corporate stock, purchased the same for $1,500 and demanded and received from his principal the sum of $2,900 in payment for said stock. The appellant in his answer denied that he acted as the agent of respondent in the transaction, but the court found against him on the issue thus presented, and this appeal is from the judgment thereupon entered against him. The principal point urged by appellant as ground for reversal is that the evidence is insufficient to support the finding that he acted as the agent of respondent in the purchase of the stock. It is a well-settled rule of appellate practice, that when there is a substantial conflict in the evidence, the findings of the trial court will not be disturbed. And it is equally well settled that such conflict exists whenever there is "such a substantial and material variance in the evidence adduced upon both sides of a litigated question of fact as will sustain the determination of the lower court, no matter which way it may find therefrom." (*Raymond* v. *Glover,* 144 Cal. 552, [78 Pac. 3].)

A careful examination of the evidence in this record leaves no room for doubt as to the sufficiency of the evidence to sup-

port the findings assailed. The testimony of respondent certainly affords such support, and the trial court, unquestionably, had the right to give his evidence full credit, even if it had been flatly contradicted by the testimony of every other witness in the case. There was, however, no such contradiction. On the contrary, the evidence of appellant himself lends strong corroboration to the testimony of his adversary in many important particulars. Both agree that the appellant at the outset was authorized by respondent to purchase the stock for $1,500. Although he agreed to make an effort to purchase the stock for that sum, he did not communicate this offer to the owner of the stock, but later informed the respondent that it could not be purchased for less than $2,900. The latter thereupon authorized appellant to purchase the stock for that price, saying he would pay $50 down and the balance within sixty days. According to the testimony of appellant and the owner of the stock this offer was communicated to the latter, who says that he then remarked that he was "not in the time business." Nothing further was said at that time, but about 10 o'clock that same morning the appellant and the owner reached an agreement whereby the former purchased the stock for $1,500, paying $100 down and the balance within fifteen days thereafter. Immediately after this agreement had been reached the appellant wrote respondent that he had purchased and was the owner of the stock, which he offered to respondent for the exact sum the latter had authorized him to pay when informed that it could not be purchased for less. The terms of payment, the amounts being excepted, were identical with terms secured from the owner by appellant, as a sequence flowing from the negotiations opened in respondent's behalf. This fact is significant when considered in connection with the peculiar circumstance that the offer accepted by appellant was not only far more advantageous than the offer that morning made by him as respondent's agent, but was for the identical amount named in the preliminary authorization when, in response to appellant's suggestion, respondent authorized him to purchase the stock for $1,500.

These pertinent and suggestive facts have an important bearing on the question presented for solution when viewed in the light of the conduct of the parties from the outset.

When appellant suggested that respondent could purchase the stock for $1,500 the latter at once authorized appellant to purchase it for him at that price.. When informed by appellant that the stock could not be purchased for the sum first mentioned, the respondent authorized the payment of the sum then named by the former as the price demanded by the owner. From this it is clearly apparent that the appellant assumed to act for respondent in negotiating for the purchase of this stock for the least sum possible, and that the latter acted upon the representations made to him as to what that sum was. The law regards form less than substance, and it would be sacrificing substance for shadow to say that, under these circumstances, the appellant could purchase the stock for the identical sum mentioned in the preliminary authorization, and by merely repudiating his agency, exact from his principal the larger sum named by him as the minimum price for which the stock could be obtained. He had been expressly authorized by respondent to pay the sum of $1,500 for this stock, and, having voluntarily undertaken to represent the respondent in negotiations for the purchase of the same, he could not buy it in for that sum, and then take advantage of his own representations and conduct to his own profit and the detriment of his principal. His relations to respondent, thereby created, could not be changed by the letter written after the purchase had been consummated. If, under the law, the relation of principal and agent existed, such relation could not be changed, modified or terminated by his mere declaration that he had purchased and was the owner of the stock. If, in that letter he had made a full and complete disclosure of all the material facts, including the price he had paid for the stock, and respondent, with full knowledge, thus imparted, had proceeded to purchase the stock for the price demanded, the latter would not be entitled to recover the surplus because, in that event, his acquiescence would entail a waiver of his rights as a principal, and be equivalent to an admission that appellant had purchased the stock in his individual, instead of his representative, capacity. But no such disclosure was made. On the contrary, the amount paid for the stock was carefully concealed, and any man in respondent's situation, reading the letter in the light of what had transpired, would naturally believe that the writer

had purchased the stock pursuant to the agreement and for the sum named in the latest authorization, which was identical with the amount demanded in the letter. Moreover, any effect certain declarations in this letter might have as evidence bearing on the existence of the agency is neutralized by other statements therein, and by the conduct of appellant thereafter. In that very letter he states terms calculated to lull suspicion and at the same time take advantage of respondent's desire to purchase the stock and his expressed willingness to pay the designated price. He knew what price to fix, because the respondent had accepted and acted upon his report following the first authorization to purchase the stock. The terms in the letter would, if accepted, enable him to reap the far-famed Teuton's one per cent by merely paying the owner money received from the respondent. He was apparently willing to use the knowledge obtained under the guise of agency to his own advantage that he might secure profits, which, in our opinion, the law will not permit him to retain. No amount of adroitness in framing the letter could countervail the concealment of material facts which it was his duty to disclose. Then, too, his conduct when confronted with respondent's demand that the new stock certificates be issued to him amounted to an admission that he had acted as the latter's agent throughout the entire transaction. True, there is some conflict in the evidence as to what transpired at that time, but actions frequently speak louder than words, and his equivocal response to this demand when natural impulses would impel him to speak frankly and pointedly, gives peculiar potency to the undisputed fact that the stock certificates were issued to respondent and not to him.

It is contended in appellant's behalf that because the service was voluntary and gratuitous, no duty or obligation to respondent rested upon him. With this contention we cannot agree. Appellant, having undertaken this agency, was bound to exercise good faith, and at least slight care and diligence, in executing what he had voluntarily undertaken to do. (*Herrick* v. *Hodges,* 13 Cal. 434; *Samonset* v. *Mesnager,* 108 Cal. 358, [41 Pac. 337] ; Civ. Code, sec. 1975.)

While he could not be compelled to enter upon the performance of the service, nor be mulcted in damages for his failure to do so, when he did enter upon such performance,

he was, in common with all other agents, bound to exercise
the utmost good faith in dealing with his principal.

An agent for hire is bound to exercise a greater degree of
care and diligence than an agent acting gratuitously, but
the latter has no greater license to indulge in misrepresenta-
tions, concealment or other breaches of good faith than the
former. It is a maxim of jurisprudence that no person will
be permitted to take advantage of his own wrong, and this
general rule is subject to no exception favoring those who
voluntarily and gratuitously undertake the performance of
service for another. No man can be compelled to don the
yoke of special, unremunerated duty to another, but when
that yoke is voluntarily assumed, the wearer will not be
permitted to lay down his burden when profit to himself fur-
nishes an inducement, and that profit results from detriment
suffered by the other party. The primary object of human
law is to curb human selfishness manifested in the various
forms of passion, and the numerous guises avarice and greed
may assume. Its most wholesome rules frown upon deceit,
chicanery, bad faith and other forms of fraud, actual and
constructive, and are designed to compel the exercise of good
faith, candor, honesty and fairness in dealings between men.
It would be a reproach to a system having these objects in
view to say that the rules referred to do not apply to one
who has officiously and voluntarily undertaken and entered
upon the performance of gratuitous service for another. The
law governing the confidential relation of principal and
agent is subject to no such reproach, for, as has been well
said: "The main difference between an agency by contract
and a gratuitous agency lies in the fact that the former
may be enforced while it remains unacted upon by either
party, while the latter can be enforced only when it has been
acted upon by the agent, and he has, by his acts, involved the
interests and rights of his principal." (Huffcutt on Agency,
sec. 29; Clark & Skyles on Agency, pp. 109, 964 et seq.; 1
Am. & Eng. Ency. of Law, pp. 1060, 1070, 1071, 1072;
Pomeroy's Equity Jurisprudence, sec. 959; Civ. Code, sec.
3517.) While our code only requires slight care and dili-
gence in ordinary cases of gratuitous agency, it in no way
modifies the rule above announced touching the exercise of
good faith. (Civ. Code, sec. 1975.) In fact, it lays down
a rule far more burdensome in cases where the agent is in-

trusted with the performance at his own request, and we are by no means certain that appellant's conduct at the inception of the agency here disclosed did not bring him within this rule. (Civ. Code, secs. 1975, 1976.)

Our attention has been invited to certain rulings of the trial court in the admission and exclusion of offered evidence, but the only argument vouchsafed is the curt statement that these rulings were erroneous and prejudicial. The supreme court long since announced that under such circumstances it did not feel "called upon to prosecute an independent inquiry in order to find out reasons for or against the correctness of the rulings," and this court has repeatedly signified its intention to follow the rule thus announced. (*People* v. *Woon Tuck Wo,* 120 Cal. 297, [52 Pac. 853] ; *Humphrey* v. *Pope,* 1 Cal. App. 375, [82 Pac. 223].) We would be justified, therefore, in ignoring the assignments of error, but have elected to examine them with the result that no error prejudicial to appellant was discovered.

The judgment is affirmed.

Buckles, J., and Chipman, P. J., concurred.