[Civ. No. 3237. First Appellate District, Division One.—March 31, 1920.]

## CHARLES S. WILSON, Appellant, v. SOUTHERN PACIFIC LAND COMPANY (a Corporation), Respondent.

[1] NONSUIT — EVIDENCE — INFERENCES—PRESUMPTIONS.—Upon a motion for a nonsuit being made, every favorable inference fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of the plaintiff, and all the evidence in favor of the plaintiff must be taken as true, and if any contradictory evidence has been given it must be disregarded.

[2] AGENCY—NEGOTIATION OF SALE OF LAND—GOOD FAITH.—A gratuitous agent of the vendee in negotiating a sale of land and in procuring the execution of a contract of sale is obliged to exercise good faith toward his principal.

[3] VENDOR AND VENDEE — ACCEPTANCE OF SECRET COMMISSION BY AGENT — RESCISSION. — The payment of a commission to the agent of the vendee by the agent of the vendor, if unknown to the vendee, renders the contract of purchase voidable at the election of the vendee, provided he acts within a reasonable time after he has discovered the fraudulent acts and conduct of his agent.

APPEAL from a judgment of nonsuit of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Reversed.

The facts are stated in the opinion of the court.

C. E. Spencer for Appellant.

Frank Thunen for Respondent.

GOSBEY, J., *pro tem.*—This is an appeal from a judgment of nonsuit in an action for the rescission of three separate executory contracts for the sale of real property from the respondent to the appellant. Each contract is the subject of a separate count in the amended complaint. A fourth count was added, being a common count for money had and received.

The plaintiff sought to have said contracts rescinded because of some alleged fraudulent transaction on the part

of the person, who, he alleges, was representing him in negotiating for the purchase of the land described in the amended complaint.

Two of the contracts referred to in the amended complaint are dated the thirtieth day of January, 1914, which we shall hereinafter designate as contracts A and B; the third contract is dated the fourteenth day of April, 1914, which we shall designate as contract C. Each contract describes certain land located in the county of Riverside, state of California.

The purchase price of the land described in each contract and the payments to be made thereon were agreed to as follows: For the land described in contracts A and B it was $2,080 for each piece, and for that described in contract C it was three thousand two hundred dollars. The initial payment mentioned in each contract was ten per cent of the purchase price, to be made on the execution of the several contracts. Payments were made as follows: two hundred and eight dollars on the thirtieth day of January, 1914, on each parcel of land described in contracts A and B, and three hundred and twenty dollars on the fourteenth day of April, 1914, on the land described in contract C. Payments on the balance of the purchase price, as mentioned in each contract, were to be made in nine equal annual installments, beginning (as per stipulation made between the parties subsequent to the dates of said contracts) on the thirtieth day of January, 1916, on each of the parcels of land described in contracts A and B, and on the fourteenth day of April, 1916, on the land described in contract C. Each deferred payment was to bear interest at the rate of six per cent per annum from the dates of the contracts, respectively. The contracts further provided that the plaintiff should pay all taxes and assessments against the land described in contracts A and B, beginning with the fiscal year July 1, 1914, and on the land described in contract C, beginning with the fiscal year July 1, 1915.

The plaintiff alleges that the interest and taxes on the land described in contracts A and B were paid up to January 30, 1916, while the interest and taxes on the land described in contract C were paid up to July 31, 1915, and to November 26, 1915, respectively. In all the plaintiff

claimed to have paid the sum of $1,461.30 on these contracts, which sum he seeks to recover in the said fourth count.

It is further alleged in said amended complaint that one H. C. Farnum was the agent of plaintiff for conducting and carrying on negotiations for the purchase by plaintiff of the said land. That said Farnum entered into an agreement with and received from H. R. Burns, the agent of the defendant, certain commissions on the sale of said land, which arrangement plaintiff knew nothing of until on or about the tenth day of February, 1917. On the fifteenth day of February, 1917, the plaintiff, upon discovering this arrangement between Farnum and Burns, notified the defendant that he had rescinded said contracts, offered to reconvey the lands to the defendant, and demanded the return of all moneys which he had paid to the defendant on said contract. The defendant, in its answer, denied that said H. R. Burns was ever its agent for conducting or carrying on negotiations for the said executory contracts (A, B, and C) mentioned in the plaintiff's amended complaint and also denied that prior to the execution of said executory contracts, or any of them, that Burns, acting as its agent, agreed with Farnum to pay the latter any commissions or compensation, if Farnum should induce the plaintiff to become the purchaser of said land.

The defendant avers that upon the date set forth in the amended complaint, when the plaintiff notified the defendant that he had rescinded said contracts, there was no contractual relation existing between the plaintiff and the defendant; but that plaintiff's rights under said contracts A, B, and C had long prior thereto been wholly forfeited, because of the nonpayment of the several installments, mentioned in said contracts, when they became due and payable, as time was made expressly of the essence of said agreements.

The defendant further denied that it was indebted to the plaintiff in the sum of $1,461.30, or in any other sum whatsoever.

The evidence produced at the trial of this action established the following facts: H. R. Burns was the agent for the defendant in the sale of the land referred to in the amended complaint. (Civ. Code, secs. 2300, 2307.) A year or so before the said contracts were executed Burns had several conversations with Farnum, relative to any sales the

latter might make of said land. Before the plaintiff entered into said contracts, or was known as a prospective purchaser of any portion of said land, Burns had promised to pay Farnum one and one-fourth per cent commission on all sales of land the latter might make for the former. Subsequently the plaintiff and Farnum talked about buying the land involved herein. This resulted in the plaintiff requesting or asking Farnum to attend to and negotiate for the purchase of said land by the plaintiff from the defendant. Farnum consented to do this, rendered such service for the plaintiff and succeeded in getting Burns to make the sales of the land upon the terms and conditions set out in said contracts. For the services Farnum rendered the plaintiff he received no compensation, but it was agreed between the plaintiff and Farnum that in case of the sale of the land thereafter that Farnum was to have one-fourth of the profits resulting therefrom, after deducting certain amounts for expenditures, provided such resales should be made on or before one year from the date of said contracts. It was further agreed between them that Farnum might acquire a one-fourth interest in the land within the year by paying therefor one-fourth of all the money expended by the plaintiff for it.

Pursuant to the agreement made by and between Burns and Farnum, the former paid to the latter certain sums of money as commissions on the sales of said land, which had been made to the plaintiff by Burns. The plaintiff was ignorant of the Burns-Farnum agreement and of the payments made thereunder, when he entered into said contracts. He did not discover the same until on or about the tenth day of February, 1917. A few days thereafter he commenced this action.

The plaintiff executed said contracts on the dates they bear. He made the initial payments thereon on the purchase price when he signed the contracts; he also paid interest on the deferred payments, as well as some taxes. The total amount of such payments was $1,461.30. Because of the agreement between Burns and Farnum and the payment of the commissions thereunder, the plaintiff would have said contracts rescinded by a court of equity.

Did the plaintiff make out a *prima facie* case and was the court warranted in granting the defendant's motion for a nonsuit?

[1] · It has been well established by a long line of decisions· that upon a motion for a nonsuit being made, every favorable inference fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of the plaintiff. All the evidence in favor of the plaintiff must be taken as true, and if any contradictory evidence has been given it must be disregarded. (*Estate of Arnold,* 147 Cal. 583, 586, [82 Pac. 252]; *Christensen Lbr. Co.* v. *Buckley,* 17 Cal. App. 37, 44, [118 Pac. 466].)

[2]  The evidence shows that Farnum was a gratuitous agent of the plaintiff in negotiating the sales of the land described in the contracts and in procuring the execution of said contracts.  Such agency having been thus established Farnum was obliged to exercise good faith toward his principal. (*Kevane* v. *Miller,* 4 Cal. App. 598, 602, [88 Pac. 643]; 2 Corpus Juris, 433, 694; *Samonset* v. *Mesnager,* 108 Cal. 354, 358, [41 Pac. 337]; Civ. Code, sec. 1975.)  ''If one of the parties to a business transaction does not deal directly with the other party, but with the latter's agent or employee, ·and enters into a secret and corrupt agreement with the agent by which the agent undertakes, for a reward or commission, given or promised, to induce his principal to contract with the party so binding him, or to sell the property to him, or otherwise to deal with him, according to the case, the transaction is so far tainted with fraud that the principal may rescind and repudiate it, if he acts with due promptness upon discovering the facts.''  (1 Black on Rescission and Cancellation, 80, sec. 34.)  The court said in *Yeiser* v. *United States Board & Paper Co.,* 107 Fed. 340, 345, [52 L. R. A. 724, 46 C. C. A. 567, 572]: ''We have on several occasions held that where one who assumes to act as the agent of another in a given transaction is really acting as the agent of a third person, or in behalf of some scheme of his own, his apparent principal, having no knowledge of such alien purpose, is not bound by such pretended agent's acts, nor by any notice or knowledge of facts which such agent had at the time the transaction was going forward. (*Thomson-Houston Electric Co.* v. *Capital Electric Co.,* 65 Fed. 341, 12 C. C. A. 643; *Wilson* v. *Pauly,* 72 Fed. 129, 134, [18 C. C. A. 475]; *Louisville Trust Co.* v. *Louisville N. A. & C. R. Co.,* 75 Fed. 433, 469, [22 C. C. A.

378].)'' The court said in *United States Rolling Stock Co.* v. *Atlantic & G. W. R. R. Co.*, 34 Ohio St. 450, [32 Am. Rep. 380] : ''The rule that an agent or trustee in matters touching his agency or pertaining to the trust cannot bind the principal or *cestui que trust* without his consent, by a contract in which the former is adversely interested, rests upon a very satisfactory foundation, and is supported by a great weight of authority.'' (*Wade* v. *Pettibone,* 11 Ohio, 57, [37 Am. Dec. 408] ; *Morrison* v. *Thompson,* L. R. 9 Q. B. 480; 1 Lead. Cas. in Eq. 192.)

In Story on Agency, section 210, the rule is said to be founded ''upon the plain and obvious consideration that the principal' bargains, in the employment, for the exercise of the disinterested skill, diligence, and zeal of the agent for his own exclusive benefits. It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interest of his principal as far as he carefully may.'' And in 2 Kent's Commentaries, 618, the same principal is asserted in the following language: ''An agent, acting as such, cannot take upon himself at the same time, an incompatible duty. He cannot have an adverse interest or employment. He cannot be both buyer and seller, for this would expose his fiduciary trust to abuse and fraud. . . . The rule which prevents the agent or trustee from acting for himself in a matter where his interest would conflict with his duty, also prevents him from acting for another whose interest is adverse to that of the principal; and in all cases, where without the assent of the principal, the agent has assumed to act in such double capacity, the principal may avoid the transaction, at his election. No question of fairness or unfairness can be raised. The court holds it constructively fraudulent, and voidable at the election of the principal.''

In a case entitled *Lightcap* v. *Nicola,* found in 34 Pa. Super. Ct. 189, and which was very fully and ably considered by the presiding judge of said court, the same issues were raised as in the case now under consideration. The facts were stated as follows: ''This was an action of *assumpsit* upon a contract entered into in the latter part of January, 1902, between Samuel Gilson Lightcap, executor, acting under a power contained in the will of William Walker, deceased, and Frank Nicola, for the sale to the latter of a

tract of land known as the Walker Farm. The price stipulated in the contract was thirty-one thousand dollars, of which one thousand dollars were paid when the contract was executed by Nicola and the balance was to be paid not later than June 1, 1902, at which time the deed was to be delivered. The defense set up was that the vendor, without the knowledge of the defendant, entered into a contract with one S. B. Cooley, the defendant's agent or employee, to pay the latter a commission. . . .

"The court having declined the defendant's point for instruction 'that under all the evidence the verdict must be for the defendant' and the jury having rendered a verdict for the plaintiffs for $36,150.50, the balance of the purchase money, the defendant moved to have all the evidence certified and filed as part of the record, and for judgment *non abstante veredicto* upon said record. The court sustained the motion and entered judgment in favor of the defendant in the sum of $1,240, the amount, with interest, paid by the defendant at the execution of the contract."

After reviewing the testimony taken at the trial of the action the learned judge, who wrote the opinion, said: "The court would have been warranted in instructing the jury that Cooley was the defendant's employee and agent in the purchase of lands and acted as such in the negotiations which culminated in the contract of sale upon which this action was brought. . . .

"It was not proved that Lightcap knew that Cooley was the defendant's employee or agent; nor was it shown affirmatively that he was ignorant of that fact." We may determine, however, from the opinion that the court found that Cooley's actions and conversations were doubtless sufficient to warrant the conclusion by Lightcap that he (Cooley) was the employee or agent of the defendant. . . .

"The two legal questions which arise upon the foregoing facts, are: First, whether the defendant had a right to rescind the contract of sale, and recover the one thousand dollars he had paid upon its execution by him; second, whether he exercised the right within a reasonable time? By whatever name it may be called, whether that of principal and agent or of employer and employee, the relation which existed between Cooley and the defendant imposed on Cooley the duty to act with fidelity and the utmost good

faith toward the defendant in purchasing or assisting to purchase this land. When one under such obligation to the purchaser enters into such relation with the seller as is evidenced by the commission agreement in this case, without the knowledge and consent of the purchaser, he puts himself in the position of attempting to serve two masters whose interests are opposed. This is against the policy of the law, and that, too, irrespective of the mode of compensation. *A fortiori* is it so, if the amount of the commission to be received from the seller depends upon the price the purchaser can be induced to pay for the land. 'The ground for the disqualification,' said Chief Justice Thompson, quoted from 8 Tomlin's Brown, 72 'is no other than that principle which dictates that a person cannot be both judge and party. No man can serve two masters. He that is intrusted with the interests of others cannot be allowed to make the business an object of interest to himself, because, from a frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted. The danger of temptation from the facility and advantage for doing wrong which a particular situation affords, does, out of the mere necessity, work a disqualification.' (*Everhart* v. *Searle,* 71 Pa. St. 256.) In the same case, speaking of the argument that as the seller was not injured by the arrangement which his agent made with the purchaser, there was nothing wrong in making that arrangement, he said: 'This is specious, but not sound. The transaction is to be regarded as against the policy of the law, and not binding upon a party who has a right to object to it. "It matters not," it is said, page 210 of Hare and Wallace's Notes, 1 Lead. Cases in Eq., "that there was no fraud meditated and no injury done; the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." This was said of anyone who acts representatively, or whose office is to advise or operate not for himself but for others.' . . . Where the seller of land, or his agent in the transaction, has knowledge that there exists between the purchaser and another such a relation that it would be a breach of duty on the part of that other person to enter into a similar relation with the seller, the same principle of law which forbids him to do so while still acting for the

purchaser, must, if it is worthy to be called a rule, or policy or principle of law, forbid the seller to enter into that relation with the purchaser's agent or employee without the knowledge and consent of his principal or employer. To hold that the seller, without any risk to himself, can thus be a party to the agent's or employee's breach of duty, and have the benefit of his active service, great or small, in selling the land, or the benefit of the diminution of the diligence he owes to the purchaser, would be contrary to sound principle; it would open the door to fraud of the 'most mischievous character, and as difficult to detect and prove as it is mischievous. The rule being, not merely remedial of actual wrong, but preventive of the possibility of it, it may be invoked not only against the unfaithful agent or employee in an action involving his commission or other form of compensation, but also against the seller; and under such a state of facts as we have set forth above it must be regarded as the foundation of a right in the purchaser to rescind the contract of sale upon discovery of the constructive fraud.''

[3] The actions of Farnum, in the instant case, were very similar to the actions and conduct of Cooley in the case from which we have so fully quoted. Such conduct, however, would not render the contract between Wilson and the defendant void, but only voidable at the election of Wilson, who should act within a reasonable time after he discovered the fraudulent acts and conduct of Farnum. This he did.

We are satisfied the plaintiff made out a *prima facie* case. The motion for nonsuit was, therefore, improperly granted.

Judgment reversed.

Waste, P. J., and Richards, J., concurred.

A petition for a rehearing of the cause was denied by the district court of appeal on April 30, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 27, 1920.

All the Justices concurred.