[Civ. No. 5062. First Appellate District, Division One.—July 19, 1926.]

## M. REZOS, Respondent, v. ZAHM & NAGEL COMPANY (a Corporation), Appellant.

[1] AGENCY — EXISTENCE OF—HOW DETERMINED.—Whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts.

[2] ID.—PRINCIPAL AND AGENT — DUAL CAPACITY OF AGENT — SECRET PROFITS.—An agent may not, as such, make a secret profit out of a transaction wherein he represents his principal, nor is he allowed to place himself in antagonism to his principal in the business of his agency, the underlying thought being that the agent should not unite his personal and representative character in the same transaction, and it matters not that the principal was in no manner injured or that the agent intended no .wrong.

[3] ID.—REPRESENTATION BY AGENT OF INTERESTS ADVERSE TO PRINCIPAL—PUBLIC POLICY.—Public policy demands that an agent shall not represent interests adverse to his principal, and such arrangements create a relation so conducive to bad faith and double dealing that they are condemned by law.

[4] ID.—INTEREST OF AGENT IN SUBJECT MATTER OF AGENCY—GOOD FAITH.—An agent is bound to exercise good faith toward his principal, and one who is entrusted with the interest of others cannot be allowed to make the business an object of interest to himself, as such transactions are against the policy of the law.

(1) 2 **C. J.**, p. 436, n. 79.   (2) 2 **C. J.**, p. 695, n. 34, 35, 37, p. 696, n. 42, p. 697, n. 53.   (3) 2 **C. J.**, p. 695, n. 37.   (4) 2 **C. J.**, p. 692, n. 16, p. 693, n. 18.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Reversed.

The facts are stated in the opinion of the court.

Willard P. Smith and Kennett B. Dawson for Appellant.

Dozier, Kimball & Dozier for Respondent.

---

1. See 1 **Cal. Jur.** 695; 21 **R. C. L.** 819.
2. See 1 **Cal. Jur.** 792; 21 **R. C. L.** 825.
3. See 1 **Cal. Jur.** 792.

TYLER, P. J.—Action to recover a commission amounting to the sum of $337.50 upon an alleged express agreement for the sale of a certain evaporator or grape-juice concentrator.

Defendant was the manufacturer of the machine and plaintiff claimed to be its agent in consummating the sale in question. The trial court so found and judgment was rendered in favor of plaintiff in the sum prayed for, together with costs. The main ground relied upon for a reversal is that the evidence shows conclusively that plaintiff was acting as the agent of the buyer, for which reason he could not also be the agent of the seller.

The facts are substantially as follows: In the year 1922 the National Fruit Products Company, of Lodi, California, was manufacturing and selling grape-juice. Plaintiff was engaged under a written contract with the company to dispose of the product upon a commission basis. The exact nature of the agreement does not appear from the record, as the contract between the parties was not offered in evidence. Plaintiff was permitted, however, over objection, to testify concerning his business arrangement.

The company was desirous of purchasing an apparatus for the manufacture of its concoction and as plaintiff was about to go east to procure orders for the mixture, the officers of the company told him to locate and select the necessary machinery. While in New York City he heard that one was made by defendant at Buffalo, New York, which he thought might be suitable for the purpose. He visited the latter city and called at the office of defendant company with his son. He presented to certain of its officers a card reading as follows: "M. Rezos, Concentrated Grapes. With National Fruit Products Co., Manufacturers of Grape Products, Lodi, California." Plaintiff stated to them that he had come east to buy an evaporating apparatus for the manufacture of grape-juice. There was a general conversation concerning the construction and operation of defendant's machine. Plaintiff was familiar with the manufacture of grape-juice. He was taken to defendant's factory and shown the machine, and he expressed his belief that it was just what he wanted and he advised the officers of the company that he would try his best to have

the National Fruit Products Company purchase the same. He spoke of being paid a commission of five per cent on the sale if he succeeded in inducing his company to make the purchase, and asked the price of the machine.

The evidence is conflicting as to whether or not the officers agreed to pay him the commission sought. Plaintiff was the sole witness on his own behalf. His son was present at the conversation, but did not testify. The officers of the corporation, while admitting that plaintiff had asked for a commission, denied that they had agreed to pay one, and they testified by deposition that the price agreed upon was $6,500, and that plaintiff had been informed that it was impossible to pay any commission, as the machine was being sold practically at cost. A written offer or proposal was thereupon drawn up, dated June 1, 1922, under the terms of which defendant proposed to furnish to the National Fruit Products Company the concentrator apparatus for the sum named f. o. b. Buffalo, New York. Plaintiff thereafter returned home and presented the proposal of defendant to the National Fruit Products Company and advised its acceptance. The company subsequently accepted the offer and the machine was thereafter, on August 20, 1922, delivered to it at Lodi, California. It was installed under plaintiff's supervision and proved satisfactory. The machine was paid for the following September. The same year plaintiff wrote a letter to defendant in which he asked the defendant for a "gift" for making the sale. In explaining what he meant by a "gift" he testified that an officer of defendant company had previously told him to use this word rather than the word "commission," as he would like to have the transaction appear regular between the two companies. In reply to this letter plaintiff was informed by the treasurer of defendant company that he was distinctly told that it would be impossible for the company to pay any commission, as the machine was being practically sold at cost.

Plaintiff, according to his own testimony, had never informed the National Fruit Products Company that he had asked for or expected to receive a commission for effecting the sale until after the bill was paid. Assuming, as we must, that the promise of a commission was made, it clearly appears that plaintiff was employed by the National

Fruit Products Company under a written agreement to sell its products, and was commissioned by that company to find for it a suitable machine for the manufacture of the same. He represented his employer in the transaction. It is true that he testified he was the agent for defendant company, but his conclusion in this matter amounts to no evidence in the face of his own statements concerning the transaction, which speak for themselves. [1] Whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreements or acts. (1 Cal. Jur. 695; 21 R. C. L., p. 819.) Being an agent of the purchaser, he was in no position to enter into a secret agreement with defendant company for a commission as a reward for his service in inducing his company to make the purchase. We have very ancient authority upon this subject. "No man can serve two masters" (Matthew vi, 24). This principle is universally recognized in the law, and it is one which permits of no exception. [2] An agent may not, as such, make a secret profit out of a transaction wherein he represents his principal; he is not allowed to place himself in antagonism to his principal in the business of his agency. The underlying thought is that the agent should not unite his personal and representative character in the same transaction. (1 Cal. Jur., p. 792.) Humanity is so constituted that where conflicting interests arise the temptation is at times too great to be overcome, and duty is sacrificed to interest. (*Pacific Vinegar Works* v. *Smith,* 145 Cal. 352 [104 Am. St. Rep. 42, 78 Pac. 550].) And it matters not that the principal was in no manner injured, or that the agent intended no wrong. (*Gordon* v. *Beck,* 196 Cal. 768 [239 Pac. 311].) [3] Public policy demands that an agent shall not represent interests adverse to his principal in order that all temptation to neglect his principal's interest may be removed from the agent. Such arrangements create a relation so conducive to bad faith and double dealing that they are condemned by the law. It is to the interest of a vendor to obtain the highest possible price for his goods and for the purchaser to pay the least. Under such circumstances it is manifest that an agent cannot represent both parties. Here plaintiff admitted that he did not inform his principal that he was to receive a

commission. The law is inflexible against such acts. Nor does the fact that the record fails to show that plaintiff was to be paid for his services by his company, alter or change the situation. Assuming him to have been a mere gratuitous agent of his company in negotiating the sale, the same principles we have discussed apply. [4] He was bound to exercise good faith toward his principal. One who is entrusted with the interest of others cannot be allowed to make the business an object of interest to himself. Such transactions are against the policy of the law. (*Wilson* v. *Southern Pac. Land Co.*, 46 Cal. App. 738 [189 Pac. 1040].)

We are of the opinion, therefore, that the finding that plaintiff acted as the agent for defendant company finds no support in the evidence. The mere fact that he so testified amounts to no evidence in face of his testimony concerning the true facts. In any event, the relation existing between plaintiff and this company is such as to preclude a recovery on his part of the claimed commission.

This conclusion renders unnecessary a discussion of other points urged for a reversal.

The judgment is reversed.

Knight, J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 16, 1926.