## FITZGERALD et ux. v. UNION CENTRAL LIFE INS. CO.

### No. 8734.

Circuit Court of Appeals, Eighth Circuit.
June 25, 1930.

Usher L. Burdick, of Fargo, N. D. (Robert A. Eaton, of Edgeley, N. D., on the brief), for appellants.

Herbert G. Nilles, of Fargo, N. D. (Daniel B. Holt and John S. Frame, both of Fargo, N. D., on the brief), for appellee.

Before VAN VALKENBURGH, Circuit Judge, and DAVIS, District Judge.

DAVIS, District Judge.

The appellants, Joseph F. Fitzgerald and Mary A. Fitzgerald, his wife, brought an action to quiet title against the Union Central Insurance Company, appellee, and others, in the district court of Dickey county, N. D. The cause was removed to the United States

District Court for the District of North Dakota. The answer of the life insurance company asserted that it was the owner and holder of two mortgages on the real property described in the complaint securing the payment of $3,500 and $1,000 respectively, and, by way of counterclaim, the foreclosure of the mortgages on account of default in the terms and conditions thereof was prayed.

All defendants, except appellee, disclaimed any interest in the property and dropped out of the case. Thereupon the cause seems to have been treated, solely, as an action to foreclose the mortgages. The District Court found for appellee on its counterclaim, sustained the validity of the mortgages, determined the amount due thereunder, and ordered the foreclosure of the same. The case is brought here on appeal.

The facts are appellants owned certain farm land in Dickey county, N. D., which was subject to certain mortgages thereon, one of which had been foreclosed, and on which the period of redemption was running at the time the loans were made by the appellee. In 1918, G. E. Lane of Ellendale, N. D., solicited the appellants to make them a loan on the property; after some negotiations the appellants signed an application in writing to the life insurance company for a loan of $3,500 on the amortized plan payable annually at the rate of $8.7184 per $100. At the same time the borrowers agreed to pay to Lane as a commission $175 and gave him a note secured by a mortgage. The borrowers were also informed that they would be required to pay a commission of 1½ per cent. of the amount of the loan to Eaton & Eaton, a copartnership of Fargo, N. D., payable each year over a period of ten years. In due time the papers covering these transactions were presented to and signed by the appellants. That is, the mortgage and notes in favor of the appellee, the mortgage and note in favor of Eaton & Eaton, and the mortgage and note in favor of G. E. Lane. The appellants received the $3,500 represented by the mortgage.

In 1920 the life insurance company made appellants an additional loan of $1,000. The commission mortgage to Eaton & Eaton was satisfied, and the amount unpaid thereunder was renewed into another set of notes and a mortgage in favor of Eaton & Eaton. Lane's mortgage securing his commission of $175 in the first transaction was also satisfied. As a result of these transactions the situation with reference to the property was as follows: First, the Union Central Life Insurance Company held a first mortgage securing $3,500, the debt therein represented by twenty notes for $305.15 each, one of said notes being due each year for twenty years; second, the Union Central Life Insurance Company held a second mortgage for $1,000 securing twenty notes for $87.18 each, one of said notes being due each year for twenty years; third, Eaton & Eaton (or the Eaton Loan Agency) held a third mortgage securing $572.50, the debt being evidenced by nine notes, one for $52.50, and eight for $62.50 each, one of said notes being due April 1st of each year for a period of nine years. The interest on the mortgages held by the appellee was calculated at the rate of 6 per cent. per annum.

The appellants urged that the court improperly overruled a motion for the continuance of the cause, and incorrectly computed the amount due under the mortgages; but these assigned errors were abandoned at the time the cause was presented.

It was next asserted by the appellants that Mr. Lane was the agent of the insurance company and made misrepresentations chargeable to the company in the negotiation of this loan. Mr. Fitzgerald stated at the trial that he hired Lane, a banker of the county seat of Dickey county, to get this loan, and that Lane was his agent. Every fact and circumstance in the case, the statement of which may well be omitted, indicates conclusively that Lane was the agent of appellants.

If it were otherwise, it is not shown that false representations were made to induce the appellants to borrow money. The claim is that a representation was made that the interest rate would be 4½ per cent. The claim is based upon a circular letter issued by Eaton & Eaton, and exhibited by Lane to the appellants during the negotiations for the loans. It contained the following statement:

"We are making amortization loans under twenty year payment plan, and with conditions that the loan can be paid in full or in part any day of the year before maturity. Under this plan of loaning, the borrower at the close of twenty years pays less cash in full payment of the mortgage than he would if he borrowed the money at simple interest at four and one-half per cent."

We are unable to understand how this can be construed into a statement that the appellants were to pay interest at the rate of 4½ per cent. The representation was "the borrower at the close of twenty years pays less cash in full payment of the mortgage

than he would if he borrowed the money at simple interest at 4½%." This was not a representation that the loan was to bear interest at the rate of 4½ per cent., but in effect was a statement that under the plan of making yearly payments in reduction of the loan that the total amount paid in satisfaction of the mortgage debt will be less at the end of twenty years, than if the debt had not been annually reduced but had carried for the full time at 4½ per cent. interest. A mathematical computation will verify the truth of this representation.

The next contention is that Eaton & Eaton acted in the dual capacity of agents for appellants and the insurance company in that they were compensated by both parties, and this resulted in the whole transaction being void as contrary to public policy. We have before us the question of the foreclosure, and, hence, the validity of the two mortgages given to the insurance company. The commission contract made by appellants with Eaton & Eaton is not directly involved in this case. Moreover, it was conceded at the argument that this contract had been voluntarily canceled. If it were true that there existed a dual agency, it is difficult to comprehend wherein that rendered the mortgages absolutely void. The contract between these two parties was an agreement to loan money on real estate security at a rate of interest recognized as proper by the statute. Neither the consideration nor the purpose of the parties was illegal in any sense of the word, but the contract was within a perfectly proper and legitimate field for private agreement. It was not contrary to morals, did not tend to injure public health, or to destroy public confidence in the administration of the law, or to undermine personal liberty or private property, or invade any other prohibited subject matter. These contracts do not fall within the class of agreements which are held by the courts to be absolutely void.

The most that could be claimed, if a dual agency existed, would be that the mortgages were voidable at the option of the borrower. The decisions to this effect are almost without number. City of Findlay v. Pertz et al. (C. C. A.) 66 F. 427, 29 L. R. A. 188; Olson et al. v. Union Central Life Insurance Co. et al., 58 N. D. 899, 225 N. W. 124; Sonnesyn v. Akin et al., 14 N. D. 248, 104 N. W. 1026; Raymond v. Edelbrock, 15 N. D. 231, 107 N. W. 194; United States Rolling Stock Co. v. Atlantic R. Co., 34 Ohio St. 450, 32 Am. Rep. 380; Carr v. National Bank, 167 N. Y. 375, 60 N. E. 649, 82 Am.

St. Rep. 725; Salem Iron Co. v. Lake Superior Mines (C. C. A.) 112 F. 239; Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149, 48 A. L. R. 913. It was the borrower's privilege to treat them as binding if he elected to do so. There was evidence that as early as 1920 appellants were fully apprised of the fact that Eaton & Eaton were the financial correspondents of appellee. Mr. Fitzgerald admitted that he knew this in 1922, yet, appellants never repudiated the mortgages, but on the contrary for four years continued to make annual payments of interest and principal. This suit was not instituted until 1928. They have to this day retained the money borrowed, and have not in this action tendered or offered to tender the return of any sum on that account whatsoever. At the time of the making of the loans they were enabled to exercise their right of redemption and reclaim their property under a former foreclosure with the proceeds of the loans made to them by the insurance company. They did so recover their land, and thereafter had the use and benefit of the same, and are, therefore, in no position now to say that these mortgages were void from the beginning. It was incumbent upon them, if they desired to rescind the contracts, to have acted with reasonable promptness. Compiled Laws N. D. 1913, § 5936; Wilson v. Southern Pacific Land Co., 46 Cal. App. 738, 189 P. 1040; 6 R. C. L. 935. Appellants, with full knowledge of the facts, have accepted and retained benefits under the mortgages in question, and have otherwise ratified these transactions.

It is urged that all of the contracts, that is, the loan and commission agreements, should be regarded as one transaction, and, as the commission agreement is unenforceable between the parties thereto (Olson et al. v. Union Central Life Ins. Co., supra), the same character should be imputed to the other contracts entered into at the same time. The appellee was not a party to the commission agreements, it did not authorize their execution, and there is not an intimation in the evidence that it had the least knowledge of their existence. Yet, if the various contracts be regarded as having in the first instance been one transaction, the appellants by acquiescence and affirmative acts have singled out and ratified the mortgage contracts. As they elected to ratify in part, they are to that extent bound. A single contract may be enforceable in part, although some of its provisions are not binding. Western Union Telegraph Co. v. Pennsylvania Co. (C. C. A.) 129 F. 849, 68 L. R. A. 968. Clearly the

mortgage contracts are binding, no matter how the commission agreements may be regarded. Under these circumstances it would be manifestly inequitable to hold that, because the Eaton & Eaton commission contract was unenforceable against appellants, the same situation existed as to the loan agreements.

It is also said appellants should have been given credit for the amount of the commissions paid to Eaton & Eaton. No part of these commissions were paid to the appellee, and it received no benefit whatsoever from the same. The mere fact that an agent acting under a limited authority, without discretion, outside of the authority conferred upon him, entered into a separate agreement with appellants, does not render the appellee liable for money paid thereon. To so say would be to abandon the elementary rule that the principal is only bound by the acts of the agent done within the scope of his authority.

All the assignments of error pressed by appellants have been carefully considered, although we have been somewhat hindered by the manner in which the cause was presented. The record indicates that the decree entered in the trial court was correct, and the same should be, and is, affirmed.