HERNDON, J.
By this action the plaintiff, Pomona Golf and Country Club, a California corporation, seeks a judgment declaring that defendant Fred Eaton holds the lessee’s interest under a certain lease as a constructive trustee for plaintiff’s use and benefit. The gist of plaintiff’s complaint is that the defendant negotiated and obtained the lease while he was serving as plaintiff’s employee and agent, and that, in obtaining the lease for himself, defendant violated duties arising from a fiduciary relationship then existing between the parties.
The trial court found that during the term of an earlier lease under which plaintiff was the lessee of the land in question defendant was plaintiff’s sublessee, and that defendant was plaintiff’s agent or manager in the operation of a liquor bar located on the premises. The trial court found, however, that defendant commenced his negotiations to obtain the leasehold, which is the subject matter of this litigation, only after the termination of his relationship as plaintiff’s employee or agent, and that, in obtaining the new lease for himself, defendant violated no fiduciary duty owing to plaintiff.
On this appeal from the judgment, plaintiff’s principal contention is that there is no substantial evidence in the record to sustain the findings to the effect that any fiduciary relationship theretofore existing between the parties had been terminated when defendant negotiated for the lease in question. Plaintiff argues that the evidence is such as to compel a finding that defendant was its agent and manager in the operation of the golf club properties, and that defendant violated duties stemming from this fiduciary relationship when he sought to lease the premises on his own account.
In obedience to the well established rule, we have surveyed the record in a light favorable to the findings and conclusions *378 of the court below (see 4 Cal.Jur.2d 485 et seq., Appeal and Error, §606). We conclude that the challenged findings of the trial court are well supported and that the judgment must be affirmed.
In 1947 plaintiff acquired the lessee’s interest in a lease of a golf course and clubhouse located in the Pomona area. The owners of the property were Ealf and Lalla Goddard.
In October, 1952, defendant and his wife met with Dr. Joseph N. Reynolds, plaintiff’s president, and presented to him a written proposal setting forth terms under which defendant would take over operations of the club. An oral agreement was reached, providing that defendant would undertake the operation of the club properties, would keep all gross receipts therefrom and would pay plaintiff $1,000 per month, plus 8 per cent of the gross receipts in excess of $10,000 per month. It was agreed that the relationship would continue until the end of plaintiff’s lease, so long as defendant “honestly” reported the amount of rent due. Defendant further agreed to purchase the inventory of liquor and food then on hand, to maintain and repair the premises and facilities at his own expense and to pay all salaries, taxes, utilities, license fees and other expenses incident to the club’s operation.
Defendant took over the operation of the club on or about November 1, 1952, at which time he paid plaintiff for the liquor and food inventory. During the ensuing five and one-half years, and until August 1, 1958, defendant regularly mailed monthly checks to plaintiff as directed. Various of these checks carried the notations “base rental” and “rental” which were never questioned by plaintiff’s president. Defendant also submitted to plaintiff monthly financial reports indicating the amount of gross receipts and some of these reports indicated the amount due to plaintiff as “base rent” and “total rent.” It does not appear that defendant was at any time asked to disclose to plaintiff the net amount of his profits in the operation of the country club.
Following the year 1951, the “on-sale” liquor license used at the clubhouse was issued to “Reynolds, Joseph N., doing business as Pomona Golf and Country Club.” On January 21, 1953, defendant signed an affidavit in support of an application for the renewal of said license wherein he was designated as “manager.”
Soon after taking over the country club, defendant was instrumental in the formation of a private organization, the
*379 Pomona Country Club Association, the members of which paid a monthly amount to defendant who refunded a portion thereof for the use of the association. In 1955, when defendant undertook construction of an additional nine holes on the property, members of the association contributed their services in aid of this project, after being assured by plaintiff that defendant was a sublessee under a verbal month to month lease. Also pursuant to this assurance, the association made several capital improvements on the clubhouse property.
In 1957, plaintiff’s lessors executed an inter vivos trust, under the terms of which the Title Insurance and Trust Company (hereinafter called the “Trust Company”) took title to the property covered by the lease. In July of the same year, plaintiff’s president contacted the president of the Trust Company in regard to an extension or renewal of plaintiff’s lease. For some time thereafter, Dr. Reynolds carried on more or less continuous negotiations with Trust Company officials.
Prior to July 9, 1958, one Mr. Harrison of the Trust Company met defendant in connection with certain inspections of the country club premises. At one of these meetings defendant indicated that he would like to lease the premises as an individual, but the record indicates that Harris on did not discuss the matter with defendant.
In March, 1958, plaintiff engaged one Thomas L. Garry, an attorney, to undertake negotiations with the Trust Company in connection with the lease. At that time, Garry was informed that the Trust Company had received no offers from any other person and was negotiating with no one else for a lease on the property.
Several weeks prior to July 9, 1958, plaintiff’s president retained the law firm of Krag and Krag to negotiate for a new lease of the country club property. On July 9 a meeting was held between representatives of plaintiff and officials of the Trust Company. At this time Dr. Reynolds made the statement that defendant did not represent him, that he did not trust defendant and that he was negotiating for himself alone. After further negotiations, it appeared that Reynolds and the Trust Company were unable to agree upon the terms of a lease.
On July, 29, 1958, Dr. Reynolds and his attorneys called upon defendant, informing him that the Trust Company was confused with respect to his status, that the Trust Company *380 had inferred that defendant was plaintiff’s tenant, whereas it was plaintiff’s view that defendant was its “manager” and subject to plaintiff’s supervision. On August 5, 1958, defendant was handed a letter signed by Dr. Reynolds which informed him that he was discharged. At the same time, defendant was served with a “Notice to Quit” and a “Notice of Non-Responsibility” was posted in two places on the clubhouse premises. Plaintiff’s attorney told defendant: “Now that you are denying that you were an employee, we certainly couldn’t leave the [liquor] license here” and that “We can’t trust you with the license. You have lied and a license is too valuable to leave with you .'. . ” Defendant later called Dr. Reynolds and asked him if he had been fired; Dr. Reynolds replied in the affirmative.
The following day, at a conference attended by defendant, plaintiff’s representatives and the attorneys of the parties, defendant stated that the Trust Company had called him and requested that he bring his attorney to the Trust Company offices for the purpose of discussing the terms of a lease. Defendant further indicated that he intended to do so. Thereafter, on September 18, 1958, the Trust Company and defendant and his wife executed a written léase on the country club property, for a term of seven years, commencing November 1, 1958.
On the basis of the facts disclosed in the foregoing recital, the trial court was warranted in concluding (1) that the relationship between plaintiff and defendant was that of sublessor and sublessee; (2) that any fiduciary relationship between the parties was terminated on or about August 6, 1958; (3) that there were no negotiations for a lease as between defendant and the Trust Company prior to August 6, 1958; (4) that before the commencement of any negotiations between defendant and the Trust Company plaintiff’s efforts to obtain a renewal or extension had proved unsuccessful; and (5) that under the circumstances appearing, defendant did not make use of any confidential information and did not violate any fiduciary duty owing to plaintiff in leasing the property on his own account.
Factually, the instant case is very similar to Cohn v. Clare, 6 Cal.App.2d 504 [44 P.2d 634], where the plaintiff sued to have it determined that a lease secured by a former employee was held in trust for plaintiff’s benefit. For several years the defendant was employed as a manager of plaintiff’s cigar store, but was discharged when the business became unprofitable. *381 After his discharge, the defendant procured a lease covering the premises in which the cigar store had been operating. The trial court found that the lease was obtained by the defendant after the relation of employee had been terminated and that it was not procured through the use of any secret or confidential information obtained by said defendant during the course of his employment.
In affirming the judgment, the appellate court held that there was substantial evidence to support the findings and commented as follows: “The fact that plaintiff and his predecessors had been operating on a month to month tenancy was generally known and discussed. It was not a ‘secret of the trade.’ Anyone in or out of the business could have ascertained whether a term lease were recorded and, upon inquiry, could have learned the terms of the tenancy under which the premises were occupied. This information is not like a confidential list of customers such as is involved in the ‘laundry’ and similar eases. There the list is confidential information acquired by reason of the employment only. Here the information is neither confidential nor secret, and it could be learned by anyone outside of the employment. The distinction is found in Avocado Sales Co. v. Wyse, 122 Cal.App. 627 [10 P.2d 485], and in those cases in which the business was of such a character that it depended upon keeping its lists of customers and other information secret.
“In view of the court’s finding here that the lease was obtained after the employee’s discharge and upon information which was neither secret nor confidential, and which was not obtained by reason of, or in the course of, the employment the case of Gower v. Andrew, 59 Cal. 119 [43 Am.Rep. 242], and similar authorities have no application.”
In Cicurel v. Plaza Service Corp., 20 Cal.App.2d 211 [66 P.2d 706], another case involving a generally similar factual situation, the applicable law was stated as follows: “It is well settled that an agent must use the utmost good faith and must not postpone his principal’s interest to his own or use information acquired in the course of his agency as a means of acquiring an advantage for himself (Gower v. Andrews, [sic] 59 Cal. 119 [43 Am.Rep. 242]; Rezos v. Zahn & Nagel Co., 78 Cal.App. 728 [246 P. 564] ; Consumers’ Co. v. Parker, 227 Ill.App. 552; Davis v. Hamlin, 108 Ill. 39 [48 Am.Rep. 541]); but where there is no breach of duty in these respects, and a lease is obtained upon information which *382 is not secret or confidential, or by reason of or in the course of an employment, the rule has no application (Cohn v. Clare, 6 Cal.App.2d 504 [44 P.2d 634]).” (And see 41 Cal.L.Rev. 38.)
Quite cursorily, plaintiff advances the contention that there is no substantial evidence to support an award of damages to defendant on his cross-complaint. This assignment of error is entitled to no consideration for the reason that appellant has completely failed to set forth in its brief any sufficient statement of the evidence material to the issue. (Murphy v. Hartford Acc. & Indent. Co., 177 Cal.App.2d 539 [2 Cal.Rptr. 325].) Respondent’s brief sets forth a summary of evidence which appears to be entirely sufficient to support the award.
Affirmed.
Fox, P. J., and Ashburn, J., concurred.